**ARKANSAS POWER & LIGHT COMPANY, Plaintiff,**

v.

**ARKANSAS PUBLIC SERVICE COMMISSION; Robert E. Johnston, Commissioner; Patricia S. Qualls, Commissioner; James W. Daniel, Commissioner, Defendant,**

**Arkansas Electric Energy Consumers, Reynolds Metals Company and Attorney General of the State of Arkansas, Intervenors.**

**No. LR–C–85–571.**

United States District Court, E.D. Arkansas, W.D.

Aug. 30, 1985.

Jerry D. Jackson, Mitchell, Williams, Selig, Jackson & Tucker, Michael G. Thompson, Friday, Eldredge & Clark, Little Rock, Ark., for plaintiff, Arkansas Power & Light Co.

Vincent Foster, Jr., Rose Law Firm, William R. Wilson, Jr., Wilson, Engstrom & Corum, Little Rock, Ark., for Arkansas Public Service Commission; Robert E. Johnston, Commissioner; Patricia S. Qualls, Commissioner; James W. Daniel, Commissioner.

Mary B. Stallcup, Elisabeth A. Walker, Office of the Attorney General, Little Rock, Ark., for Attorney General.

Greg Jones, N.M. Norton, Jr., Charles L. Schlumberger, Wright, Lindsey & Jennings, Little Rock, Ark., Kenneth A. Barry, Richmond, Va., for Arkansas Electric Energy Consumers and Reynolds Metals Co.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### I. Introduction

Pending before the court are motions to intervene in this litigation pursuant to Rule 24, Fed.R.Civ.P., of numerous parties. The

background facts will be briefly summarized.

Arkansas Power & Light Company (AP & L) is a wholly-owned subsidiary of Middle South Utilities (MSU), which is a public utility holding company under the Public Utility Holding Company Act of 1935. Other wholly-owned subsidiaries of MSU are Louisiana Power and Light Company (LP & L), New Orleans Public Service, Inc. (NOPSI), and Mississippi Power and Light (MP & L).

Middle South Energy, Inc. (MSE) is another wholly-owned subsidiary of MSU. MSE owns 90% of the Grand Gulf Nuclear Generating Plant (Grand Gulf) in Port Gibson, Mississippi.

The subsidiaries have engaged in coordinated planning for and operation of electric generation and transmission facilities through a series of power pool agreements. The power pool agreements are wholesale rate schedules subject to the exclusive jurisdiction of the FERC. Under the Unit Power Sales Agreement filed by MSE with the FERC in June, 1982, AP & L was allocated none of the Grand Gulf costs. However, an Administrative Law Judge (ALJ) of the FERC issued an initial decision on February 3, 1984, which requires AP & L to purchase a 36% entitlement to MSE's portion of the power produced by Grand Gulf.

On June 13, 1984, the FERC issued Opinion No. 234 affirming the 36% allocation. Grand Gulf I began commercial operation on July 1, 1985, at which time AP & L began incurring approximately $1,000,000 per day in liability for the Grand Gulf costs of which most is not recoverable by AP & L under existing rates. In November, 1984, AP & L applied to the Arkansas Public Service Commission (APSC) for approval of a tariff known as the "M33 Rider." The M33 Rider would have allowed AP & L to recover Grand Gulf costs through retail intrastate rates. The APSC suspended the M33 Rider in December, 1984, and has not allowed it to go into effect.

Also in December, 1984, AP & L applied to the APSC for authority to issue and sell first mortgage bonds and stock, now known as the "Financing Docket," to raise funds to pay Grand Gulf costs through a "phase in" period. On August 2, 1985, the APSC approved the financing applications, but apparently prohibited AP & L from using any funds to pay FERC-allocated Grand Gulf costs. AP & L alleges that the actions of the APSC are purposely causing the eventual financial collapse of AP & L with the intent to effectuate a state "takeover" of AP & L and to subvert FERC Opinion No. 234.

AP & L filed this action on August 13, 1985, in the United States District Court for the Eastern District of Arkansas. Almost immediately Arkansas Electric Energy Consumers (AEEC), Reynolds Metals Company (Reynolds) and the Attorney General of the State of Arkansas moved to intervene.

In addition to the motions to intervene of AEEC, Reynolds and the Arkansas Attorney General, which were granted on August 20, 1985, by the Honorable George Howard, Jr., the following groups of corporations and institutions have filed motions seeking to intervene in this action: (1) Firstsouth, F.A., J.A. Riggs Tractor Co., Flake & Co., Stebbins & Roberts, Inc., Blackhawk Warehousing and Leasing Co., Pickens-Bond Construction Co., and the Orbit Valve Company (the "Firstsouth Group"); (2) St. Vincent Infirmary; (3) Stephens, Inc.; (4) Central Moloney, Inc.; (5) Union National Bank of Little Rock; and (6) Simmons First National Bank, Pine Bluff, Arkansas; National Bank of Commerce, Pine Bluff, Arkansas; Citizens First State Bank, Arkadelphia, Arkansas; American State Bank, Charleston, Arkansas; Merchants and Planters Bank, Clarendon, Arkansas; Worthen Bank & Trust Company, N.A., Little Rock, Arkansas; Elk Horn Bank & Trust Company, Arkadelphia, Arkansas; DeWitt Bank & Trust Company, DeWitt, Arkansas; Merchants and Farmers Bank, West Helena, Arkansas; First National Bank of Hot Springs, Hot Springs, Arkansas; Simmons First Bank,

Lake Village, Arkansas; Commercial Bank & Trust, Monticello, Arkansas; McGehee Bank, McGehee Arkansas; Mercantile Bank, Jonesboro, Arkansas; First American Bank of Hot Springs, N.A., Hot Springs, Arkansas; Bank of Holly Grove, Holly Grove, Arkansas; Peoples Bank & Trust Company, Russellville, Arkansas; Exchange Bank & Trust Company, El Dorado, Arkansas; First State Bank, Crossett, Arkansas; First National Bank in Blytheville, Blytheville, Arkansas; Citizens State Bank, Bald Knob, Arkansas; Merchants and Planters Bank & Trust Co., Arkadelphia, Arkansas; First National Bank of Sharp County, Ash Flat, Arkansas; First National Bank of Fordyce, Fordyce, Arkansas; Cleburne County Bank, Heber Springs, Arkansas; Union Bank & Trust Company, Monticello, Arkansas; Simmons First Bank of Jonesboro, Jonesboro, Arkansas; The Bank of Yellville, Yellville, Arkansas; Citizens Bank, Strong, Arkansas; and First State Bank, Springdale, Arkansas (the "Simmons Group").

AP & L, the APSC, AEEC and Reynolds have responded to the various intervention motions. Stephens, Inc., has replied to these responses. The motions will be briefly discussed in turn.

## II. The Firstsouth Group

Firstsouth is a federal savings and loan association and all other members of the Firstsouth Group are Arkansas corporations. In support of their motion, these proposed intervenors have alleged that they are "dependent" for electrical power on AP & L's "continuing vitality" and that the actions of the APSC "threaten" this "vitality." The potential consequences of AP & L's "insolvency" are alleged to be "extremely devastating."

The members of this group allege, moreover, that there is an evident lack of adequate representation of their interests by the present parties to this action. Specifically, it is contended that granting the relief requested by AP & L would increase the annual electric bill of the Firstsouth members by 28%, although AP & L has proposed in the APSC proceedings to "phase in" the Grand Gulf costs. The "phasing in" of the Grand Gulf costs would, it is claimed, increase retail rates by 6% to 7% next year.

Thus, this group seeks to intervene to protect their "unique" interests in allowing AP & L sufficient relief to protect its "financial integrity without unduly burdening" the members as consumers of electricity.

The pertinent portion of Rule 24, Fed.R. Civ.P., is as follows:

**Rule 24. Intervention**

(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) **Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The requirements of the applicable subsection, 24(a)(2), are therefore (1) timeliness, (2) the existence of an interest relating to the property or transaction which is the subject of the action, (3) the possible impairment of that interest, and (4) inade-

quacy of representation by existing parties. *See Little Rock School Dist. v. Pulaski County School Dist.*, 738 F.2d 82 (8th Cir. 1984).

Because the motion is clearly timely under the four-pronged test of *EEOC v. Westinghouse Electric Corp.*, 675 F.2d 164 (8th Cir.1982), the court will confine its discussion to the latter three factors.

■ As retail consumers of electricity, members of the Firstsouth Group clearly claim an "interest" in the outcome of this litigation sufficient to satisfy the second requirement. In this regard, the Firstsouth Group's members stand in the same "shoes" as Reynolds and AEEC, whose "interests" are those of retail consumers of electricity.

With regard to the third requirement, it is obvious that members of the Firstsouth Group face the same potential impairment of their "interests" as do Reynolds and AEEC. *See generally Ford Motor Co. v. Bisanz Bros., Inc.*, 249 F.2d 22 (8th Cir. 1957).

Thus, insofar as the prerequisites for intervention as of right are concerned, the critical focus is upon whether the interests of the members of the Firstsouth Group are "adequately" represented by existing parties. The intervention motions of the Firstsouth Group members are artfully drafted so as to differ slightly from that filed by Reynolds and AEEC. Whereas Reynolds and AEEC phrase their interests as those which "unabashedly" arise out of "economic self-interest," the members of the Firstsouth Group seek, allegedly, to protect a "middle ground" position which insures the continuing "solvency" of AP & L, but reduces the impact of AP & L's rate increase request.

AP & L is vigorously advocating a position which protects its continuing solvency. Nonetheless, the "phase-in" proposal to which the members of the Firstsouth Group refer was proposed by AP & L in the APSC proceedings. To the extent that AP & L seeks to "phase in" the Grand Gulf costs in the APSC proceedings, its position is identical to that of the Firstsouth Group. In any event, it is beyond question that AP & L seeks to preserve its solvency.

The Attorney General has intervened purportedly to represent the interests of the people of the state of Arkansas in utility-related matters.

Additionally, the APSC is vested with the duty to insure that AP & L's rates are "just and reasonable" to its patrons and the public. *See generally* Ark.Stat.Ann. § 73–204. The APSC has a duty to fix rates that lie between that which would amount to an overcharge of the public and that which would amount to a confiscation of AP & L's property. *Arkansas Pub. Serv. Comm'n v. Continental Tel. Co.*, 262 Ark. 821, 561 S.W.2d 645 (1978). In order for rates to be confiscatory, it is not necessary that stockholders receive no return and that the utility immediately default on its debts. If the rates ultimately and foreseeably produce such a result, the rates are impermissibly confiscatory. The rates must provide AP & L with a fair return on its invested capital, *Arkansas Pub. Serv. Comm'n v. Yelcot Tel. Co.*, 266 Ark. 365, 585 S.W.2d 362 (1979), consistent with the public interest. *AP & L v. Arkansas Pub. Serv. Comm'n*, 261 Ark. 184, 546 S.W.2d 720 (1977).

Thus, the only final position which the APSC may adopt which is consistent with its lawful duties is that AP & L is entitled to a fair return on its invested capital in an amount that would not constitute an overcharge to its consumers and the public.

The consumer interests asserted by the members of the Firstsouth Group are already posited by AEEC and Reynolds. The continuing solvency interest of AP & L is already vociferously argued by AP & L. The "middle ground" position adopted by members of the Firstsouth Group is essentially that which the APSC is bound by law to consider in formulating its final position.

The primary issue before this court at this time is not what rate should be set by the APSC, but whether the APSC's actions "interfere" with interstate commerce or consciously "subvert" FERC Opinion No.

234. Any actions taken pursuant to powers and duties *lawfully* exercised by the APSC with regard to retail intrastate rates are not subject to review by this court.

The court believes that the interests asserted by the members of the Firstsouth Group are adequately protected by those that are already parties to this litigation. Accordingly, petitioners are not entitled to intervention "as of right," pursuant to Rule 24(a)(2). The assertion that no particular party has adopted the specific position taken by the Firstsouth Group is not entirely accurate; however, even if it were, this does not, in the court's opinion, indicate necessarily that the interests of the members of the Firstsouth Group are not adequately protected in this litigation.

■ Insofar as the Firstsouth Group seeks to intervene under Rule 24(b)(2), it is clearly true that the applicants' claims and the main action have questions of law or fact in common. Nonetheless, the court strongly believes in this case that the intervention of persons whose interests are adequately represented would unduly delay or prejudice the adjudication of the rights of the original parties.

The court notes that the preliminary jurisdictional hearing held in Fayetteville on August 23, 1985, was attended by almost 20 attorneys, representing the parties and, presumably, some of the applicants for intervention. Although the court restricted participation to those already made parties to the litigation, well over three hours was required for those parties to simply state their respective positions with regard to the jurisdictional issues. Because further hearings are scheduled for September 11, 1985, some discovery and exchange of information will be required. Discovery orders have already been requested from this court. The APSC made clear at the hearing in Fayetteville that overly extensive involvement in this lawsuit may hamper its ability to discharge its statutory duty to rule on AP & L's rate increase by the deadline, which is September 9, 1985. In the event it fails to do so, AP & L "wins," at least temporarily, by *de facto* default

under state law, thereby allowing AP & L to put its proposed rates into effect under bond. In this event, which is a definite possibility, the interests of the APSC, the Attorney General, AEEC and Reynolds would be prejudiced. Additionally, because AP & L is allegedly incurring liability of approximately one million dollars per day for the Grand Gulf costs, it is entitled to have the APSC rule on its requests as expeditiously as possible.

The court believes that the intervention of the members of the Firstsouth Group would prejudice the existing parties and prejudicially delay this litigation. Therefore, permissive intervention under Rule 24(b)(2) will not be allowed.

### III. St. Vincent Infirmary

■ St. Vincent Infirmary is a non-profit corporation which owns and operates a hospital located in Little Rock, Arkansas. It alleges that it and its many health facilities are "dependent" for its power on AP & L's "continuing vitality." It states "while the cost of electric service is important, it is an issue fundamentally different from St. Vincent Infirmary's concern for uninterrupted continuous service." St. Vincent Infirmary seeks to posit the identical position urged by the Firstsouth Group with regard to the "phasing in" of AP & L's Grand Gulf costs.

For the reasons set forth in the discussion of the petition for intervention filed by the Firstsouth Group, the petition for intervention of St. Vincent Infirmary will be denied.

### IV. Stephens, Inc.

■ Stephens, Inc. (Stephens), is a member of the underwriting group for certain Pollution Control Revenue Bonds and Industrial Development Revenue Bonds (the "PCR Bonds"), in the amount of approximately $137,445,000 since 1976, substantially all of which are outstanding. Stephens is a member of a bidding group which has been tentatively recommended for selection to underwrite the issuance of $150,000,000 of additional pollution control revenue bonds pending before the APSC in Docket No. 85–159–U. The position of the APSC with regard to the proposed PCR Bonds is apparently similar to its position with re-

spect to the first mortgage bonds referred to on page 10 of AP & L's complaint.

Stephens, therefore, alleges that, as holders of the PCR Bonds, it is a primarily unsecured creditor of AP & L "who will suffer substantial losses in the event AP & L is placed in" a position of financial danger. The pendency of the present action allegedly is causing irreparable damage to holders of the PCR Bonds, and is causing a reduction in the market price of the PCR Bonds.

On the other hand, Stephens asserts that certain actions of AP & L may constitute an improper diversion of funds to the detriment of certain of AP & L's creditors, including Stephens. Thus, Stephens argues that as a creditor of AP & L and as an entity with a direct economic interest in the trading for AP & L's obligations, its interests are distinct from the interests of the present parties.

To the extent that Stephens' interests are furthered by the financial stability and continued solvency of AP & L, its interests are identical to those of AP & L. To avoid this problem, Stephens asserts merely that "certain actions" of AP & L "may" constitute an improper diversion of funds. The court has not the slightest indication what "certain actions" of AP & L are involved or in what manner these actions would be "improper" and "detrimental" to Stephens.

In any event, even if AP & L "may" take "certain actions" which are "improper" or "detrimental" to Stephens, this does not give rise to a right to intervene in *this* matter. If this were sufficient to provide the basis for Stephens' intervention as of right, then Stephens would also have the "right" to intervene in any litigation which indirectly affects AP & L's financial position.

There has been no showing how these "certain actions" are involved in the pending matters before the court, other than the fact that the "Proposed PCR Bonds" are currently pending in the APSC in Docket No. 85–159–U. The court does not believe that this is sufficient to give Stephens a "right" to intervene. The court notes that for all purposes *other than the inter-vention,* Stephens has adopted the claims set out in AP & L's complaint (see ¶ 9, Complaint in Intervention of Stephens, Inc.).

The court concludes that the interests of Stephens are adequately protected by present parties to this litigation. To the extent that Stephens' interests differ from those of AP & L, the court believes that the "certain actions" on the part of AP & L, to which Stephens refers, are largely irrelevant, and at best, too speculative, tenuous and conjectural to provide a basis for intervention as of right.

The request of Stephens to intervene pursuant to Rule 24(b)(2) is denied for the reasons discussed in connection with the request of the Firstsouth Group.

### V. Central Moloney, Inc.

■ Central Moloney, Inc. (Moloney), is a manufacturer of electrical transformers, and is an owner and operator of a plant dependent for its power on AP & L's "continuing vitality," and allegedly "has a strong economic interest in the continued ability of plaintiff AP & L to provide a stable source of electrical energy to run Central Moloney's plant."

Moloney seeks the same "phasing in" of Grand Gulf costs as requested by the members of the Firstsouth Group, and for the same reasons. In like fashion, the court denies Moloney's request to intervene for the same reasons set forth in the discussion of Firstsouth's motion.

### VI. Union National Bank

■ Union National Bank (Union) has extended an unsecured line of credit to AP & L in the amount of $3,000,000. These funds allegedly have been used by AP & L to defray Grand Gulf costs. Union, too, seeks the "phasing in" of Grand Gulf costs.

Union argues that its interests are not adequately represented by AP & L because all present parties "have an interest in shifting to Union the burden of paying costs associated with Grand Gulf." To the extent Union's line of credit is drawn upon to pay Grand Gulf costs, Union asserts that it faces a significantly increased risk of loss without adequate security.

Nonetheless, unless AP & L's credit-worthiness, solvency, or stability is impaired, Union, as a general unsecured creditor, cannot be harmed. AP & L vigorously represents its own interests in its continuing solvency, credit-worthiness, and stability. To the extent that AP & L "may" take "certain actions" of a nature beneficial to itself and detrimental to Union, these, too, are largely irrelevant to this litigation and are too speculative and contingent to provide the basis for a right of intervention. To adopt the arguments of this nature advanced thus far would grant to every man, woman or child with any financial connection to AP & L, or to any recipient of AP & L's electrical output, the "right" to intervene in this action. As noted, the court does not believe that such is the case in the present posture of this litigation.

Union's request to "permissively" intervene is denied for the reasons set forth in the court's discussion of Firstsouth's similar request.

### VII. The Simmons Group

■ The members of the Simmons Group are all financial institutions who are "substantial creditors" of AP & L. In this regard the Simmons Group states that "a strong probability exists that the two parties, AP & L and (the Simmons Group) may become adverse parties in subsequent proceedings if the rate requested by AP & L is denied (by the APSC)."

It is true that the concern and apparent panic on the part of various consumers of electricity and numerous financial institutions are, to a great extent, caused by the FERC allocation and various actions taken by the APSC in apparent response. It is equally obvious that in the event the APSC grants AP & L no relief whatsoever, and in the event that no court, federal or state, grants AP & L any relief, in connection with the Grand Gulf costs imposed upon AP & L by the FERC allocation, at some point AP & L may suffer financial instability. At that point, numerous persons' interests may become adverse to AP & L as well as to each other.

Nonetheless, this does not indicate that AP & L's financial interests are now adverse to those of the applicants for intervention. With regard to the financial integrity of AP & L, all of the financial institutions seeking to intervene stand in practically the same "shoes" of AP & L. From a financial point of view, any ruling favorable to AP & L is favorable to the financial institutions, insofar as *this* litigation is concerned. Any adverseness which may subsequently develop as a result of rulings disadvantageous to AP & L will be brought about by transactions and events largely irrelevant to this litigation. Under the theory advanced by the lending institutions, any lending institution could intervene in almost any lawsuit involving any of its debtors. The reasoning posited by the financial institutions would allow intervention as of right on behalf of any bank in a divorce action, for example, merely because one of the parties is a current debtor on an unsecured line of credit.

The court believes that the interests of the members of the Simmons Group are adequately represented by existing parties and, therefore, their motion pursuant to Rule 24(a)(2) is accordingly denied. The request for permissive intervention pursuant to Rule 24(b)(2) is denied for the reasons stated in the discussion of the motion of the Firstsouth Group.

### VIII. Conclusion

It is apparent from the above discussion that the basic interests advanced by the proposed intervenors derive from a common fear of AP & L's potential insolvency. A financial collapse by AP & L is a "necessary precursor" to the existence of facts which would give rise to the professed interests advanced by the proposed intervenors. The court believes that these interests are indirect and contingent. *See SEC v. Flight Transportation Corp.*, 699 F.2d 943 (8th Cir.1983); *NOPSI v. United Gas Pipe Line Co.*, 690 F.2d 1203 (5th Cir.1982).

All present parties have endorsed the "phasing in" of Grand Gulf costs. AP & L proposed the phase-in in the M33A Rider. AEEC and Reynolds, although resisting the pass-through of Grand Gulf costs,

strongly urge a phase-in if, in fact, any Grand Gulf costs are passed on to retail consumers. The Attorney General's position is similarly favorable to a phase-in.

Any interests in the non-curtailment of electric service are adequately represented by Reynolds and AEEC, as well as AP & L. The Attorney General is bound by statute to provide effective and aggressive representation for the people of Arkansas concerning utility-related matters. Act 39 of 1981, § 4(i).

The APSC, AEEC and Reynolds have all opposed these interventions, although the APSC supported the intervention of AEEC and Reynolds. The court does not intend to foreclose the possibility of allowing interested parties to attend any proceedings and seek leave to proceed as *amicus curiae* with briefs. However, the court concludes that the proposed intervenors are not entitled to intervention as of right and that permissive intervention would delay proceedings and prejudice those who are already parties to the litigation.

Accordingly, the motions to intervene will be denied by separate order entered concurrently herewith.