**UNITED STATES of America, Plaintiff,**

v.

**E.O.A. SENIOR HOUSE, INC., Defendant.**

**Civ. No. LR-C-91-161.**

United States District Court, E.D. Arkansas, W.D.

Jan. 10, 1992.

Judgment Jan. 22, 1992.

Patrick C. Harris, U.S. Atty.'s Office, Little Rock, Ark., for U.S.

Carey E. Basham, Howell, Price, Trice, Basham & Hope, Little Rock, Ark., for defendant.

P.A. Hollingsworth, Hollingsworth Law Firm, P.A., Little Rock, Ark., for intervenor plaintiff.

## ORDER

EISELE, District Judge.

Before the Court is the Motion to Intervene as a Plaintiff, Docket Entry No. 7,

filed by Mr. Andrew Jeffries. Also before the Court is the Motion for Summary Judgment, Docket Entry No. 12, filed by the plaintiff, the United States of America. For the reasons discussed below, the Motion to Intervene as a Plaintiff will be denied and the Motion for Summary Judgment will be granted.

## I. BACKGROUND

Pursuant to Section 202 of the National Housing Act of 1959, 12 U.S.C. § 1701q, the United States Department of Housing and Urban Development (HUD) loaned the defendant, E.O.A. Senior House, Inc., a non-profit corporation, $2,040,700.00 to finance E.O.A. Senior House. The loan is secured by a mortgage filed of record on September 29, 1980, with the Circuit Clerk of Pulaski County, Arkansas.

E.O.A. Senior House is a housing facility for elderly and handicapped persons. E.O.A. Senior House consists of a three story building containing approximately sixty-six households. The defendant contracts with a management agent for the management of the property and the collection of rents. The defendant pays the cost of building maintenance and repays the loan from HUD with rent proceeds and HUD monthly rent subsidies.

As one of the requirements for obtaining the loan, the defendant on September 26, 1980, executed with HUD a "Regulatory Agreement, Housing for the Elderly—Nonprofit" (Regulatory Agreement). *See* Complaint, Docket Entry No. 1, Exhibit A. The Regulatory Agreement governs expenditures, recordkeeping procedures and other operational and management functions of the project. According to the government, the "Regulatory Agreement is designed to assure that project funds and income are used to further the purposes of the [Housing Act] program." *Id.* at para. 7.

The United States filed this action, pursuant to 28 U.S.C. § 1345, contending that E.O.A. Senior House, Inc. breached certain provisions of the Regulatory Agreement it entered with HUD. The United States further contends that the defendant has been notified of the alleged violations and has failed to take corrective measures. The United States seeks to take over and operate the property, the appointment of a receiver and the ejectment of the defendant from the property.

Mr. Andrew Jeffries, the applicant for intervention, was formerly the Management Agent of E.O.A. Senior House. Mr. Jeffries served in that capacity from October 1, 1982, until December 1, 1989, at which time the E.O.A. Senior House Board of Directors voted to terminate Mr. Jeffries' Management Agreement. By its terms Mr. Jeffries' Management Agreement with the defendant does not expire until September 30, 1992.

Subsequent to his termination, Mr. Jeffries brought suit against the defendant in the Pulaski County, Arkansas Chancery Court. Mr. Jeffries prevailed in that action and was awarded damages from December 1, 1989, until the date of the trial. The Pulaski County Chancellor denied Mr. Jeffries' request for an award of future damages because "[Mr. Jeffries] sued the defendant prior to the completion of the term of the contract. A separate action must be brought for the lost wages that accrued after the trial and to the end of the employment term." *Jeffries v. Goldsby, et. al.*, No. 89-7943, slip op. at 1–2, (Pulaski County Chancery Court, Fifth Division, October 9, 1990).

## II. MOTION TO INTERVENE

The Court will first address Mr. Jeffries' Motion to Intervene. Mr. Jeffries seeks to intervene, pursuant to Rule 24 of the Federal Rules of Civil Procedure, as a plaintiff in this action. Mr. Jeffries contends he should be permitted to intervene as of right, Fed.R.Civ.P. 24(a)(2), or, in the alternative, permissively intervene pursuant to Fed.R.Civ.P. 24(b). The Court concludes, after a careful review of the record and the parties' pleadings, that the Motion to Intervene should be denied.

### A. *Intervention as of Right*

Rule 24(a) provides in pertinent part

Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24 (1991). In *Arkansas Power & Light Company v. Arkansas Public Service Commission*, 107 F.R.D. 335 (E.D.Ark.1985), the Court provided this discussion of intervention as of right under Rule 24(a)(2)

The requirements of the applicable subsection, 24(a)(2), are therefore (1) timeliness, (2) the existence of an interest relating to the property or transaction which is the subject of the action, (3) the possible impairment of that interest, and (4) inadequacy of representation by existing parties.

*Id.* at 338–39 (citing *Little Rock School District v. Pulaski County School District*, 738 F.2d 82 (8th Cir.1984)). The parties do not contest the timeliness of Mr. Jeffries' Motion to Intervene. The Court also concludes that Mr. Jeffries, as an unsecured future creditor of E.O.A. Senior House, Inc. by way of his anticipated breach of contract action, has an interest relating to the property which is the subject matter of this action. The Court will, therefore, limit its discussion to the two remaining prongs of the test quoted above.

Mr. Jeffries in his Motion to Intervene states that his interest in the property, i.e., his unmatured right to sue E.O.A. Senior House, Inc. for the balance of the damages resulting from the breach of his employment contract, will as a practical matter be impaired or impeded by the disposition of this action. Mr. Jeffries states that "[a] judgment in the pending action would have a direct immediate effect upon the right of the Applicant and if the decision was appealed and affirmed, the claim of the Applicant for all practical purposes is worthless." Memorandum of Law in Support of Motion to Intervene, Docket Entry No. 8, at 6.

The issue to be resolved in this action is whether the plaintiff or the defendant should be entitled to control the property and operations of E.O.A. Senior House. The plaintiff seeks to gain control of E.O.A. Senior House and remove the defendant therefrom, and the defendant opposes such action. The resolution of this action may indeed affect Mr. Jeffries' ability to collect any judgment rendered in a second lawsuit for breach of his employment contract. That circumstance, however, does not warrant Mr. Jeffries' intervention in this action. Mr. Jeffries' claim is, in effect, an effort by a future unsecured creditor to obtain pre-judgment attachment or relief against his debtor. This Court cannot grant that relief.

Moreover, as stated above, the defendant opposes the efforts of the plaintiff to remove it from the control of E.O.A. Senior House. The Court concludes that the defendant's efforts in that respect adequately represent Mr. Jeffries' interests herein. *See Arkansas Power & Light Company,* 107 F.R.D. at 341–42.

### B. Permissive Intervention

■ Mr. Jeffries alternatively seeks to permissively intervene pursuant to Rule 24(b)(2) of the Federal Rules of Civil Procedure, which provides in pertinent part

Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common. ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24 (1991).

As discussed above, the issues of fact and law in this action go to the question of which party is entitled to control the operations and property of E.O.A. Senior House. Mr. Jeffries claim is a prospective claim against the assets of E.O.A. Senior House, Inc. The Court is of the opinion that Mr. Jeffries has failed to show that there exists

common questions of fact and law between this action and Mr. Jeffries' breach of contract claim sufficient to warrant permissive intervention.

Finally, Mr. Jeffries' claims are not yet ripe for determination. The employment contract upon which Mr. Jeffries bases his interest in this action does not expire until September 30, 1992. As discussed above, the Pulaski County Chancellor ruled that under Arkansas law Mr. Jeffries cannot bring suit for the breach of the employment contract until the contract term expires on September 30, 1992. This Court is bound by that ruling. This matter is set for trial the week of March 2, 1992. Therefore, even if Mr. Jeffries intervened in this action, the Court could grant no relief on his breach of contract claim.

## III. THE MOTION FOR SUMMARY JUDGMENT

■ The government in its Motion for Summary Judgment contends that the defendant violated various provisions of the Regulatory Agreement, as discussed in more detail below, and that after notification and opportunity to cure the violations, the defendant failed to do so. The government argues that the violations and the defendant's subsequent failure to cure entitle it to summary judgment. The government further contends that the relief it requests, ejectment of the defendant and operation of the project by HUD, is appropriate under the Regulatory Agreement.

The validity of the Regulatory Agreement is not in dispute. *See* Complaint, Docket Entry No. 1, at paras. 4–7, and Answer, Docket Entry No. 5, at para. 2. The Agreement requires the defendant to comply with a number of provisions concerning the finances and operation of the property. Specifically, the Agreement provides (references are to paragraph numbers in the Agreement):

(3) ... The expenses incurred and disbursements shall not exceed the reasonable and necessary amount thereof, and the [defendant] will not expend any amount or incur any obligations in excess of the amounts approved in the annual operating budget except upon written certification by the [defendant] to HUD that such expenses were unanticipated and are necessary ...

(7) [The defendant] shall not without the written approval of the Secretary: ...

(d) Pay any compensation or make any distribution of income or other assets to any of its officers, directors or stockholders;

(11) ...

(c) Neither [the defendant] nor its agents shall make any payment for services, supplies, or materials unless such services are actually rendered for the project or such supplies or materials are delivered to the project and are reasonably necessary for its operation. Payments for such services, or materials shall not exceed the amount ordinarily paid for such services, supplies, or materials in the area where the services are rendered or the supplies or materials furnished.

(d) [The defendant] and its successors, assigns or its agents shall retain copies of all written contracts or other instruments which affect the mortgaged property, all or any of which may be subject to inspection and examination by HUD or its duly authorized agents.

(e) The books and accounts of the operations of the mortgaged property and of the project shall be kept in accordance with the requirement of HUD.

(g) At the request of HUD, its agents, employees, or attorneys, the [defendant] shall give specific answers to questions upon which information is desired from time to time relative to the income, assets, liabilities, contracts, operation, and condition of the property and the status of the Mortgage and any other information with respect to the [defendant] or the mortgaged property and of the project which may be requested.

(h) All receipts of the project shall be deposited in the name of the project in a bank ... Such funds shall be withdrawn only in accordance with the provisions of this agreement for expenses of the project. Any person receiving funds of the project shall immediately deposit

such funds in the project bank account and failing to do so in violation of this agreement shall hold such funds in trust.

(k) No officer, director, trustee, member, stockholder nor authorized representative of the [defendant] shall have any financial interest in any contractual arrangement entered into by the [defendant] in connection with rendition of services, the provision of goods or supplies, management of the property, procurement of furnishings and equipment, construction of the project, procurement of the site or other matters whatsoever.

Regulatory Agreement, attached to the Complaint as Exhibit A.

In support of its contention that the defendant violated the above-quoted terms of the Agreement, the government relies on the affidavit of Mr. Kenneth Brown, the Acting Chief of the Loan Management Branch in the Little Rock, Arkansas office of HUD. Mr. Brown states in this affidavit that the defendant violated the Regulatory Agreement in the following manner: (1) changing all of the project's bank accounts without notifying HUD and maintaining improper bank accounts; (2) entering into supervisory or managerial service contracts without the written approval of HUD; (3) failure to maintain bookkeeping records and accounts of the project and failure to provide financial reports in conformity with HUD requirements; (4) permitting excessive and unauthorized expenditures; (5) payment of compensation to a business owned by a member of the defendant's board of directors without prior written consent of HUD; (6) and permitting improper advance payments for services. *See* Affidavit of Kenneth Brown, Exhibit A to Docket Entry No. 13. Mr. Brown further states that HUD officials met with the defendant on numerous occasions to try to correct or resolve these problems. Finally, Mr. Brown points to numerous correspondence from HUD to the defendant advising the defendant of the problems, demanding correction thereof, and notifying the defendant that failure to correct the problems would result in the declaration of a default. *See, e.g.* Letter of December 5, 1990, to the defendant, Exhibit C to the Complaint.

The defendant in its Response to Motion for Summary Judgment, Docket Entry No. 14, asserts that there are genuine issues of material fact which must be resolved at trial. The defendant attached to its Response the joint Affidavit of Mr. W. Dean Goldsby, Director of the defendant, and Ms. Vivian Smith, Manager of the defendant. *See* Exhibit A to Docket Entry No. 14. In the affidavit, Mr. Goldsby and Ms. Smith provide responses to Mr. Kenneth Brown's affidavit. They admit to certain facts that establish violations of the Regulatory Agreement, but they defend the defendant's actions by way of explanations for certain practices and expenditures. They also contend that all of the expenditures complained of by HUD were reasonable and necessary. Finally, they admit that budgets and financial statements were not provided to HUD on a timely bases, but they contend these problems were caused by management turnover.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."

The United States Supreme Court stated in *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), that summary judgment motions "may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* 110 S.Ct. at 3187. The inferences to be drawn from the underlying facts in the materials presented must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Curran v. Merrill Lynch, Pierce, Fenner and Smith*, 622 F.2d 216, 224 (6th Cir.1980).

In *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court stated that in the summary judgment stage, the role of the district court is not to weigh the evidence and determine its truth, but rather to determine whether there is any genuine issue for trial. "There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249, 106 S.Ct. at 2510. Finally, the Supreme Court held that once a party has carried its burden under Rule 56, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). *See Green v. St. Louis Housing Auth.,* 911 F.2d 65, 68 (8th Cir.1990).

Returning to the case at bar, the undisputed facts establish that the defendant violated the Regulatory Agreement in the following manner: making expenditures in excess of the amounts approved in the operating budget; distributing project funds to a member of its board of directors without HUD's written approval; receiving and paying for services rendered by a business owned by a member of its board of directors; and failing to timely file required budgets and other financial reports or information. The defendant attempted to explain and/or justify certain of the violations, but the defendant asserted no equitable defenses to the Complaint (assuming *arguendo* that equitable defenses are applicable to this action). *See* Answer, Docket Entry No. 5 ("[The defendant denies generally and specifically the allegations ... of the complaint ... and prays that the Plaintiff be held to a strict burden of proof thereof.").

The Regulatory Agreement provides that Upon a violation of any of the above provisions of this Agreement by [the defendant], HUD may give written notice, thereof, to [the defendant], by registered or certified mail ... If such violation is not corrected to the satisfaction of HUD within 30 days after the date such notice is mailed or within such further time as HUD determines it is necessary to correct the violation, without further notice HUD may declare a Default under this Agreement effective on the date of such declaration of default and upon such Default HUD may:

(1) Take possession of the project ... and operate the project in accordance with the terms of this Agreement....

Regulatory Agreement, attached to the Complaint as Exhibit A.

The record indicates that violations of the Regulatory Agreement occurred and that HUD provided to the defendant written notice of the violations and the opportunity to correct the same. Indeed, the record indicates that HUD and the defendant met on numerous occasions and exchanged several pieces of correspondence concerning the violations. HUD also advised the defendant that it would declare a default if the problems were not corrected. HUD did so when the defendant failed to correct the violations to HUD's satisfaction. The Court therefore concludes that the government's Motion for Summary Judgment is well taken and the same will be granted.

IT IS THEREFORE ORDERED the Motion to Intervene, Docket Entry No. 7, filed by Mr. Andrew Jeffries be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment, Docket Entry No. 12, filed by the plaintiff United States of America, be, and it is hereby, GRANTED. The government is directed to prepare a precedent judgment and submit the same to the Court for review.

### JUDGMENT

In accordance with the Court's Order dated January 10, 1992, it is hereby CONSIDERED, ORDERED and ADJUDGED that the United States Department of Housing and Urban Development, through its management agent, Midland Management, Shawnee Mission, Kansas, be, and it is hereby, immediately appointed as receiver and ordered to take over and operate the E.O.A. Senior House on a day to day basis.

IT IS FURTHER CONSIDERED, ORDERED and ADJUDGED that E.O.A. Senior House, Inc., the defendant, turn over all keys, files, accounts, books, documents, checking accounts, reserve refund replacement accounts and security deposit accounts of E.O.A. Senior House to the United States Department of Housing and Urban Development.

IT IS FURTHER CONSIDERED, ORDERED and ADJUDGED that E.O.A. Senior House, Inc. furnish to the United States Department of Housing and Urban Development an accounting of all monies spent in the operation of E.O.A. Senior House.

IT IS FURTHER CONSIDERED, ORDERED and ADJUDGED that E.O.A. Senior House, Inc. turn over to the United States Department of Housing and Urban Development all tangible objects that relate to E.O.A. Senior House so that the Department can operate the business, collect rents and pay the bills of the business.

IT IS FURTHER CONSIDERED, ORDERED and ADJUDGED that this Judgment is effective immediately and shall remain in force until the United States moves the Court for the appointment of a different receiver or to transfer the title of the property to a new entity.