ST. JOHN SANITARY DISTRICT, a Special Taxing District of the State of Indiana; Jerry Rudy, Joel Nieting, and Richard Hoover, Individually and as Members of the Board of Sanitary Commissioners of the St. John Sanitary District; Town of St. John, a Municipal Corporation; Kenneth Gembala, Carl Brown, and Douglas Patterson, Individually and as Members of the St. John Town Counsel, Appellants–Petitioners,

v.

TOWN OF SCHERERVILLE and Schererville Utility Board, Appellees–Respondents.

No. 45A03–9301–CV–22.

Court of Appeals of Indiana, Third District.

Oct. 18, 1993.

Michael L. Muenich, Hand, Muench & Wilk, Highland, David M. Augsten, O'Drobinak, Austgen & Goad, Crown Point, for appellants-petitioners.

Edward P. Grimmer, Crown Point, for appellees-respondents.

HOFFMAN, Judge.

This is an appeal from an order denying St. John Sanitary District and the Town of St. John, et al., (collectively "St. John"), petitioners-appellants' Petition for Arbitration disputing the terms of a sewage agreement between itself and the Town of Schererville (Schererville).

The facts relevant to this appeal disclose that on December 14, 1990, Schererville and St. John entered into an agreement whereby Schererville agreed to accept, treat, and dispose of St. John's wastewater (Agreement) for a fee. The Agreement allowed Schererville to review and adjust, biennially, the rate charged St. John. Under the Agreement, any such adjustment was to reflect actual expenditures by Schererville for the operation and maintenance of its sewage treatment plant for the preceding two-year period. The Agreement also contained an arbitration provision.

In the spring of 1992, Schererville proposed a rate increase which St. John opposed. A dispute arose between the parties, and they began to discuss this issue through a series of correspondence and meetings beginning in June of 1992 and ending in November of 1992.

On September 29, 1992, St. John attended a public hearing of the Schererville Utility Board (Board) on a proposed resolution calling for the rate increase. St. John ob-jected to the resolution by filing a remonstrance with the Board.

On November 25, 1992, St. John attended another meeting held by the Board to once again discuss the proposed resolution. On that same date, following the meeting, the resolution was adopted by the Schererville Town Council (Council). St. John again objected to the rate change by filing a petition with Schererville on November 30, 1992. In its petition, St. John listed objections to the rate increase along with a demand for arbitration. On December 2, 1992, Schererville filed the petition in the Lake Circuit Court. *See* IND.CODE § 36–9–23–26.1(b) (1991 Supp.).

On December 14, 1992, St. John also filed a Petition for Arbitration pursuant to IND. CODE § 34–4–2–1 *et seq.* asking for a court order compelling arbitration. On December 22, 1992, after hearing argument, the court denied the petition holding that "the parties' contract expressly preconditions any resort to arbitration upon respective but unsuccessfully good faith attempts at renegotiation." This appeal ensued.

As restated, St. John's sole issue on appeal is whether the Agreement compels arbitration of Schererville's decision to impose the rate increase.

St. John claims that the trial court erred when it refused to compel arbitration. Specifically, St. John contends that the Agreement should be read broadly to allow for arbitration of all generalized disputes arising from it. Schererville opposes this interpretation and claims that the dispute over the rate increase is non-arbitrable because the provision narrowly allows for arbitration of the contract terms only.

■ "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Post Tribune Pub. Inc., v. American Arbitration Ass'n, Inc.* (N.D.Ind.1991), 767 F.Supp. 935, 939, *citing AT & T Technologies, Inc. v. Communications Workers of America et al.* (1986), 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655 (*quoting United Steelworkers of America v. Warrior &*

*Gulf Navigation Co.* (1960), 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409). Because the interpretation of unambiguous terms of an agreement to arbitrate is a matter of contract involving pure questions of law, this Court will independently evaluate the agreement, substituting its own judgment for that of the trial court if necessary. *See Ohio Cas. Ins. Co. v. Ramsey* (1982), Ind. App., 439 N.E.2d 1162, 1165.

 When a court is asked to compel arbitration, its first task is to ascertain whether the parties have agreed to arbitrate the particular dispute. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.* (1985), 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444. In making this determination, the court will not rule on the potential merits of the underlying claims. *See International Union of Operating Engineers Local 103 v. Indiana Construction Corp.* (N.D.Ind.1989), 706 F.Supp. 667, 672, *citing AT & T Technologies, Inc.,* 475 U.S. at 649, 106 S.Ct. at 1418, 89 L.Ed.2d at 656. Rather, it will decide whether the dispute, on its face, is covered by the language of the arbitration provision. *See National R.R. Passenger Corp. v. Chesapeake & O. Ry Co.* (7th Cir.1977), 551 F.2d 136, 140, *citing Warrior & Gulf,* 363 U.S. at 582–583, 80 S.Ct. at 1351–1353, 4 L.Ed.2d at 1409. Also, in its review, the court will apply ordinary contract principles governed by state law. *See Ziegler v. Whale Securities Co., L.P.* (N.D.Ind.1992), 786 F.Supp. 739, 741.

 As St. John points out, there exists a strong national policy favoring arbitrability. In fact, arbitration must be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id., citing Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1352–1353, 4 L.Ed.2d at 1409. Moreover, "[w]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration" and the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." *Ziegler,* 786 F.Supp. at 741, *citing*

*Dickinson v. Heinhold Securities, Inc.* (7th Cir.1981), 661 F.2d 638, 643.

 Here, the relevant portion of the arbitration provision reads as follows:

"The parties hereby agree that if either party believes the effect of this Agreement in any way is inequitable or unfair to its citizens, such party may by thirty (30) days written notice, request re-negotiation of any part of this Agreement and the other party will in good faith participate in such negotiations.

If the parties are unable to solve their problems by negotiations each party shall, within thirty (30) days after said negotiations fail, name an engineer, accountant or other person who has knowledge in the disputed areas. The two named arbitrators shall name a third person to serve and the three arbitrators shall determine the unresolved issues between the parties. The judgment or findings of a majority of the arbitrators shall be binding upon the parties and a final determination of all unresolved issues. . . ."

St. John claims that the first paragraph should be read independent of the second with the first allowing for arbitration when the parties wish to "renegotiate" a provision of the Agreement and the second allowing for arbitration of all other "problems" or generalized disputes. Schererville, on the other hand, argues that the two provisions must be read together in sequence and that as a result, a dissatisfied party must attempt to renegotiate the wording of the Agreement and may only seek arbitration when the terms of the contract require alteration.

Neither argument hits the mark and thus are not dispositive of this appeal. Rather, a close reading of the Agreement discloses that it does not specifically exclude arbitration of the rate increase. The Agreement allows for arbitration when "[e]ither party believes the effect of this Agreement in *any way* is inequitable or unfair to its citizens. . . ." (Emphasis added.) Also, it provides that "such party may by thirty (30) days written notice, request re-negotiation of *any part* of this Agreement and the

other party will in good faith participate in such negotiations." (Emphasis added.)

As the rate increase and its effect on St. John is essentially at the heart of the Agreement, this issue fits reasonably within the language used. Moreover, absent a specific exclusion, it cannot be said with positive assurance that the issue is non-arbitrable. Therefore, Schererville's decision to change the rate charged St. John is arbitrable under the Agreement.

Next, Schererville contends that even if the Agreement contemplates arbitration on the rate issue, St. John has failed to meet the prerequisites to arbitration: good faith negotiations, thirty days written notice of its demand for arbitration, and the naming of an arbitrator. St. John disagrees and claims that under the circumstances it did all that would have been possible to fulfill its obligations in seeking arbitration.

■ Initially, Schererville claims that neither statute nor the Agreement gives the court the authority to have the rate issue sent into arbitration. IND.CODE § 36–9–23–26.1(b) states in relevant part:

"The court may confirm the decision of the municipal legislative body or sustain the objecting petition."

Although Schererville is correct in that IND.CODE § 36–9–23–26.1 does not specifically give the court the power to compel arbitration,[1] St. John also, on December 14, 1992, sought a court order compelling arbitration under IND.CODE § 34–4–2–1 *et seq.* Moreover, Ind.Trial Rule 38 provides that:

"Nothing in these rules shall deny the parties by contract or agreement to submit or agree to submit to arbitration made before or after commencement of an action thereon or deny the courts the power to specifically enforce such agreements."

Therefore, Schererville's argument is without merit.

■ As noted above, Schererville also claims that St. John failed to timely make good faith efforts to negotiate the rate increase before seeking arbitration. However, that St. John made good faith efforts to negotiate the rate increase with Schererville is evidenced by the correspondence submitted by St. John showing that the parties discussed this issue between June and November of 1992.

Negotiations ended on November 25, 1992, when Schererville ultimately adopted the proposed rate change resolution. On November 30, 1992, St. John filed an objection with Schererville expressly seeking arbitration on the rate issue. Thus, its demand for arbitration was preserved.

■ Schererville also claims that St. John did not meet its prerequisites to arbitration because it did not name an arbitrator. A party who refuses to comply or fails to comply properly with the negotiation steps of a grievance procedure will not be permitted to prevent arbitration on the ground that the grievance procedure has not been exhausted. *Cf. City of Meriden,* 48 Lab.Arb. (BNA) 138, 140–141 (1967) (Summers, Arb.) (where a public employee did all that was reasonably possible to follow a labor arbitration agreement's grievance procedure and those efforts were frustrated by the city's failure to also follow the procedure, an arbitrator held that the city could not argue that arbitration was barred as a remedy).

Here, as noted above, the Agreement provides:

"If the parties are unable to solve their problems by negotiations each party *shall,* within thirty (30) days after said negotiations fail, name an engineer, accountant or other person who has knowl-

---

1. IND.CODE § 36–9–23–26.1(a)(3) requires that the written petition be "[f]iled with the municipal legislative body within five (5) days after the ordinance establishing the rates and charges is adopted...." St. John explains that although this statute was not in existence when the parties formulated the Agreement and thus the parties did not contemplate a judicial remedy to their dispute, it filed its objection within five days after Schererville's action rather than the thirty days allowable under the Agreement, so that it could preserve its remedies both under the Agreement while preserving its right to a judicial review of the rate increase. Included within the objection was a demand for arbitration.

edge in the disputed areas." (Emphasis added.)

Neither St. John nor Schererville named an arbitrator as is required under the Agreement. However, St. John attempted to preserve its right to seek arbitration by asking the court to compel arbitration twice: once on December 2, 1992, and again on December 14, 1992. Based on this evidence, it becomes apparent that exhaustion of the prerequisites to arbitration was futile. Thus, St. John is not estopped from seeking arbitration.

Finally, Schererville claims that none of the six individual appellants have standing to request arbitration because arbitration can be based only upon the Agreement. However, it fails to state reasons for this contention and does not cite any authority in support. Thus, the issue is waived.[2]

For the foregoing reasons, the decision of the trial court is reversed.

Reversed.

GARRARD and FRIEDLANDER, JJ., concur.

**2.** *See* Ind.Appellate Rule 8.3(A)(7).