UNIVERSITY CASEWORK SYSTEMS, INC. *v.* GEORGE BAHRE, D/B/A GEORGE BAHRE, COMPANY.

[No. 2-175A7. Filed April 11, 1977. Rehearing denied May 19, 1977. Transfer denied July 29, 1977.]

*John R. Carr, Jr., A. David Meyer, Buschmann, Carr &
Schabel,* of Indianapolis, for appellant.

*H. Earl Capehart, Jr., Anthony W. Mommer, Krieg, De-
Vault, Alexander & Capehart,* of Indianapolis, for appellee.

## CASE SUMMARY

LOWDERMILK, J.—This case was transferred to this office
from the Second District in order to help eliminate the dis-
parity in caseloads among the Districts.

Plaintiff-appellant, University Casework Systems, Inc. (UCSI), appeals from the trial court's judgment denying its petition seeking a permanent injunction to stay arbitration proceedings commenced by defendant-appellee, George Bahre, d/b/a George Bahre Company (Bahre).

We affirm.

## FACTS

The facts essential for our disposition of this appeal are as follows: In November, 1970, Butler University invited contractors to bid for the construction of the Undergraduate Science Building and Holcomb Institute for Environmental Scientific Research located on the Butler University campus in Indianapolis, Indiana.

Butler University departed from the traditional procedure used in construction projects of inviting each contractor to bid for all of the work to be performed. Instead of seeking a general contractor who would perform all of the work by himself and through his subcontractors, Butler University divided the work into six (6) categories and invited separate bids for each of the six (6) categories of work. The six (6) categories of work for which separate bids were to be received were as follows:

(1) General Construction Work;

(2) Combined Plumbing and Heating, Ventilation and Air Conditioning Work;

(3) Plumbing Work;

(4) Heating, Ventilating and Air Conditioning Work;

(5) Electrical Work; and,

(6) Laboratory Equipment.

The form of contract to be executed between Butler University and the various contractors was "The American Institute of Architects Standard Form of Agreement Between Owner

and Contractor"[1] and "The American Institute of Architects General Conditions of the Contract for Construction."[2]

The prospective bidders were furnished, *inter-alia*, with the following information:

"*     *     *

B. Bidder for General Construction work agrees to coordinate, assume and accept all of Owner's interests, liabilities and obligations under Proposals accepted by Owner for Plumbing; Heating, Ventilating and Air Conditioning; Electrical Work; and Laboratory Equipment as well as Furnishing of Cut Stone already under contract between Owner and Ingles. Bidder for General Construction work shall include in his proposal all costs connected with such coordination and assumption of Owner's interests, including the cost of bond in favor of General Contractor should he require bond from such contractors who will become subcontractors under General Contractor.

*     *     *

D. Bidders for Plumbing; Heating, Ventilating and Air Conditioning; and Electrical Work and Laboratory Equipment work agree:
   (1) That their proposals may form basis of contract to be entered into with Bidder for General Construction, and
   (2) That Owner may assign all of its interests, liabilities and obligations under said proposal to successful Bidder for said General Construction. (Except for payments which will be made directly by Owner upon General Contractors approval of application for payments.)

*     *     *"

This information furnished to bidders was made a part of the parties' contract documents. Further, on the proposal form furnished bidders it was stated:

"*     *     *

COORDINATION OF ASSIGNED CONTRACTS

Bidder for General Construction Work agrees to coordinate, assume and accept all the Owner's interests, liabilities and obligations, except for payment of sums due under contracts

1. AIA Document A101, September 1967.
2. AIA Document A201, April 1970.

resulting from separate proposals accepted by Owner of Furnishing of Cut Stone; Plumbing; Heating, Ventilation and Air Conditioning; Site Utilities; Electrical Work; and Laboratory Equipment. Above proposals for General Construction Work (Base Bid No. 1) includes all costs connected with such coordination and assumption.

* * *"

Bahre was the successful bidder for the general construction work, and on January 19, 1971, Bahre entered into a separate contract with Butler University as general contractor. UCSI was the successful bidder for the furnishing and installation of laboratory equipment, and on January 19, 1971, UCSI entered into a separate contract with Butler University to perform this work.

UCSI in its contract with Butler University agreed to complete its work within 730 calendar days of January 19, 1971. UCSI did not substantially complete its contract until May 10, 1973. The contracts executed between Butler University and the various contractors had therein the following arbitration provisions:

"7.10 Arbitration

7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This Agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

7.10.2 Notice of the demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect. The demand for arbitration shall be made within the time limits specified in Subpara-

graphs 2.2.10 and 2.2.11 where applicable, and in all other cases within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations."

## ISSUES

1. Whether Bahre is an assignee of any right emanating from the contract executed between Btuler University and UCSI.

2. Whether Bahre is a third party beneficiary of the contract executed between Butler University and UCSI.

3. Whether the Federal Arbitration Act is applicable to this action.

4. Whether Bahre's arbitration claim is within the scope of the contract executed between Butler University and UCSI.

## DISCUSSION AND DECISION
ISSUE ONE

At the outset of this opinion we deem it important to emphasize that on appeal of claims which have been tried to the court without a jury this court will not disturb the judgment of the trial court unless clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A). The findings or judgment of the trial court will be found clearly erroneous only when upon our review of all the evidence we are left with a definite and firm conviction that the trial court erred. *Nelson* v. *Butcher* (1976), 170 Ind. App. 101, 352 N.E. 2d 106, 107.

UCSI argues that the trial court erred in finding that Bahre was an assignee of the contract it had executed with Butler University. The crux of UCSI's argument is that the record is devoid of any evidence that Butler University ever assigned its contract with UCSI to Bahre.

We agree with UCSI that subsequent to Butler University's acceptance of Bahre's bid on January 19, 1971, there is no

evidence in the record which shows an assignment of the Butler-UCSI contract to Bahre. However, this is not the end of our inquiry.

The parties to a contract are free to include any provisions therein they desire which do not offend the public policy of our state. We are unaware of any rule or policy which would prohibit a promisor (Bahre) from agreeing that upon the promisee's (Butler University) acceptance of his offer, and in exchange for a part of the consideration to be furnished by the promisee, that the promisor will accept an assignment of rights, and/or assume a delegation of duties, which the promisee has in separate contracts.

As we have noted, *supra,* the general information and the bid proposal form furnished Bahre provided, *inter-alia,* as follows:

"*     *     *

B. Bidder for General Construction work agrees to coordinate, assume and accept all of Owner's interest, liabilities and obligations under Proposals accepted by Owner for Plumbing; Heating, Ventilating and Air Conditioning; Electrical Work; and Laboratory Equipment as well as Furnishing of Cut Stone already under contract between Owner and Ingles. Bidder for General Construction work shall include in his proposal all costs connected with such coordination and assumption of Owner's interests, including the cost of bond in favor of General Contractor should he require bond from such contractors who will become subcontractors under General Contract.

*     *     *

COORDINATION OF ASSIGNED CONTRACTS

Bidder for General Construction Work agrees to coordinate, assume and accept all of the Owner's interest, liabilities and obligations under separate proposals accepted by Owner for Furinshing of Cut Stone; Plumbing; Heating, Ventilation and Air Conditioning; Electrical Work; and Laboratory Equipment. Above proposal for General Construction Work (Base Bid No. 1) includes all costs connected with such coordination and assumption.

*     *     *"

At this point in our opinion we think it important to emphasize that the general subject of contractual assignments is fraught with problems in terminology. Only contractual *rights* arising under a contract may be *assigned,* whereas contractual *duties* are properly said to be *delegated.* To assign contractual rights does not *sua sponte* carry with it the delegation of contractual duties, or vice versa. J. Calamari & J. Perillo, *Contracts,* 401-402 (1970).

The contractual documents presently before this court were subject to varying interpretations by the trial court because of the usage of misplaced and confusing terminology.

For example, it has been pointed out above that the successful bidder (Bahre) agreed to coordinate, assume and accept all of the owner's (Butler University) interests, liabilities and obligations arising out of its separate construction contracts. The word "interests" as used above is confusing and could be construed as adding nothing to the words liabilities and obligations. Therefore, the contract could have been reasonably construed as a delegation of Butler University's duties under its separate construction contracts without a correlative assignment of rights. However, this court will not construe words in a contract in such a manner as to render them meaningless. The word "interests" could also have been construed by the trial court as meaning "rights." One of Butler University's rights in its contract with UCSI was to arbitrate contractual disputes. Therefore, the trial court could have reasonably concluded that Bahre agreed to accept the assignment of this right upon Butler University's acceptance of Bahre's bid to become general contractor.

UCSI argues that there could have been no assignment of the Butler-UCSI contract to Bahre because that contract was not awarded until January 19, 1971, which was subsequent to the time that Butler University received Bahre's bid.

We agree with UCSI that it is the general rule that a purported assignment of rights from a contract not yet in ex-

istence is ineffective to transfer those rights. 6 Am. Jur.2d, *Assignments* § 15. However, our examination of the record discloses that Butler University's contracts with both Bahre and UCSI were accepted by Butler University on January 19, 1971. We have not been able to discover, nor have the parties brought to our attention, which contract Butler University first accepted. Also, as we have previously determined, the trial court could have found that Butler University did not make an assignment of its separate construction contracts until January 19, 1971, the date when Butler University accepted the bids of both Bahre and UCSI. Therefore, there would have been no attempted present assignment of rights in a contract to be executed at some uncertain future date.

UCSI points to several events subsequent to January 19, 1971, which it contends demonstrates that Butler University made no assignment to Bahre.

On January 25, 1971, USCI furnished a performance bond to Butler University. Bahre was not named in the performance bond.

Section IC-4A, Special Conditions, of the parties' contractual documents provided as follows:

> "If, Bidder for General Construction Work desires separate performance-payment bonds from bidders for Plumbing; Heating, Ventilating and Air Conditioning; Electrical Work; and Laboratory Equipment, *assigned* to Contractor for General Construction Work, they shall cooperate with Contractor for General Construction to furnish separate performance-payment bond payable to Contractor for General Construction Work. Contractor for General Construction Work shall pay for such bonds as a part of costs in connection with coordination and acceptance of Owner's interests. These bonds are in addition to the performance-payment bond which the Owner may provide covering the total project." (Our emphasis)

Although it is the opinion of this court that the actions of the parties herein subsequent to January 19, 1971, would be

irrelevant and shed no light on whether an effective assignment was made on January 19, 1971, it can be clearly seen from the above contractual provision that Bahre was entitled to a performance bond from UCSI upon demand. Bahre at no time demanded a performance bond from UCSI. Therefore, the fact that Bahre was not named in the performance bond UCSI furnished to Butler University adds no weight to UCSI's argument.

As further evidence that the Butler-UCSI contract was not assigned to Bahre, UCSI directs this court's attention to a minor change in the Butler-UCSI contract approved by Butler University on February 4, 1972, which was not signed by Bahre.

The record discloses that the contractual modification was channeled through Bahre by a construction bulletin. Also, the modification affected the price which Butler University was obligated to pay UCSI. Butler University expressly retained all liability to make payments to the various contractors upon Bahre's approval of their work.

UCSI argues that all of Bahre's rights against UCSI came to an end on November 30, 1973. On that date Butler University made its final contract payment to UCSI. Articles 9.7.5 and 9.7.6 of the parties' contractual documents—General Conditions—provided as follows:

"*      *      *

9.7.5   The making of final payment shall constitute a waiver of all claims *by the Owner* except those arising from:

   .1   unsettled liens,

   .2   faulty or defective Work appearing after Substantial Completion,

   .3   failure of the Work to comply with the requirements of the Contract Documents, or

   .4   terms of any special guarantees required by the Contract Documents.

9.7.6   The acceptance of final payment shall constitute a waiver of all claims by the Contractor except those previously made in writing and still unsettled. (Our emphasis)

*      *      *"

It is the opinion of this court that UCSI's argument is without merit. Articles 9.7.5 and 9.7.6 clearly refer to claims which the owner (Butler University) has against its contractors, and vice versa. They would not affect a claim for damages which Bahre, as an assignee, would have against UCSI (a separate contractor) suffered as a result of UCSI's delay in performing its contract with Butler University.

It is the opinion of this court that the trial court's findings, conclusions and judgment that Bahre was an assignee of Butler University's right to arbitrate its contractual disputes with UCSI were not clearly erroneous. TR. 52(A) ; *Nelson* v. *Butcher, supra.*

## ISSUE TWO

Having already determined that the trial court's judgment was not clearly erroneous in holding that Bahre was an assignee of Butler University's right to arbitrate grievances arising out of the Butler-UCSI contract, we need not decide the cumulative issue of whether Bahre obtained this same right as a third party beneficiary.

## ISSUE THREE

UCSI argues that the trial court erred in concluding that the Federal Arbitration Act[3] was applicable herein because UCSI and Butler University did not, at the time their contract was executed, contemplate any transaction "involving interstate commerce."[4] *Pathman Construction Co.* v. *Knox County Hospital Assoc.* (1975), 164 Ind. App. 121, 326 N.E.2d 844, 853. We do not agree.

---

3.   9 U.S.C. §§ 1-14.
4.   Section 2 of the Act provides:
     "A written provision in any maritime transaction or *a contract evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Our emphasis.)

In *Pathman, supra,* this court examined both the position of the parties at the time the contract was executed and their conduct subsequent to the contracts formation in determining whether the parties to the contract therein contemplated a transaction which would involve interstate commerce.

In the case at bar there was evidence from which the trial court could have found that the principal place of business of UCSI was El Cajon, California. Various personnel, of UCSI were intermittently sent from California to Butler University, UCSI employed the Wisconsin firm of Ward & Sons as its subcontractor. Much of the laboratory equipment provided by UCSI was manufactured outside of Indiana. UCSI's surety on its contract with Butler University had its principal place of business in New York. Finally, the architectural firm appointed to oversee the construction project had its principal place of business in St. Louis, Missouri.

It is the opinion of this court that the above facts are sufficient to demonstrate that the Butler-UCSI contract did involve interstate commerce, and thereby justified the trial court in concluding that the Federal Arbitration Act applied to their transaction.

This evidence was presented to the trial court through the affidavit of Gene Nottingham. UCSI contends that the affidavit should not have been considered by the trial court because it showed on its face that it was not made on the personal knowledge of the affiant.

Nottingham's affidavit reveals that he was Bahre's project manager and was familiar with all parties and equipment at the construction site. Futhermore, the last sentence of the first paragraph of Nottingham's affidavit states, "The matters referred to hereinafter are true to the best of my knowledge and belief." Inasmuch as Nottingham's affidavit does state that it was made on the affiant's personal knowledge, UCSI's

argument is without merit. *Champ* v. *Kendrick* (1892), 130 Ind. 549, 30 N.E. 787, 788; *Deering Harvester Co.* v. *Peugh* (1897), 17 Ind. App. 400, 45 N.E. 808, 809.

UCSI contends that the Indiana Uniform Arbitration Act[5] alone controls the question of whether UCSI is obligated to arbitrate with Bahre. We do not agree.

In *Pathman, supra,* this court made it clear that the Federal Arbitration Act must prevail wherever applicable. The trial court concluded that UCSI was under a duty to arbitrate with Bahre under both the Indiana Uniform Arbitration Act and the Federal Arbitration Act. We have previously determined that the contract herein would have an effect on interstate commerce. Therefore, the Federal Arbitration Act would be applicable. UCSI being under a duty to arbitrate with Bahre under the Federal Act, the error, if any, of the trial court in concluding the Indiana Arbitration Act was also applicable was harmless. Ind. Rules of Procedure, Trial Rule 61.

ISSUE FOUR

UCSI contends that the subject matter of Bahre's arbitration claim (i.e. damages for delay in performance) is not within the scope of the Butler-UCSI contract arbitration provision, and therefore Bahre's claim against UCSI is non-arbitrable.

It is true that Bahre, as an assignee of Butler University, could acquire no greater contractual rights to recovery than Butler University had against UCSI. Therefore, the question we must decide is whether Butler University could have recovered damages against UCSI occasioned by delays in performance. It is the opinion of this court that such recovery was permissible under the contract.

The Butler-UCSI contract documents—General Conditions Article 7.10.1—provided, *inter-alia,* as follows:

"\*      \*      \*

---

5. IC 1971, 34-4-2-1 *et seq.* (Burns Code Ed.).

7.10.1 *All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, . . . shall be decided by arbitration . . .*

            \*      \*      \*" (Our emphasis)

Section IC-5 of the contracts Special Conditions provided, *inter-alia,* as follows:

         "\*      \*      \*

It is agreed that Owner *may* deduct from contract price of Contractor and retain as liquidated damages, and not as a penalty or forfeiture, sum of $300.00 per building for. each calendar day *after dates specified for final completion of project that work remains substantially incompleted.*

            \*      \*      \*" (Our emphasis)

It appears clear to this court that Butler University did have a right to recover damages from UCSI upon UCSI's delay in performance. Nor do we believe that this right was locked into the contracts provisions covering liquidated damages and therefore rendered non-arbitrable. Article 7.6.1 of the General Conditions of the parties' contract provided as follows:

*"The duties and obligations imposed by the Contract Documents and the rights and remedies available thereunder shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law."* (Our emphasis)

After carefully examining the record in this proceeding, and the briefs submitted by the parties, we are unable to say that the judgment of the trial court denying UCSI's petition to make permanent a temporary stay of Bahre's arbitration proceeding was clearly erroneous.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 362 N.E.2d 155.