**MPACT CONSTRUCTION GROUP, LLC, Appellant–Defendant,**

v.

**SUPERIOR CONCRETE CONSTRUCTORS, INC., Appellee–Plaintiff,**

and

**Flying J, Inc., FJI Plaza Company III, LLC, Lehman Brothers Holdings, Inc. d/b/a Lehman Capital, a division of Lehman Bros. Holdings, Inc., Gary's Plumbing Service, Inc., Koberstein Trucking, Inc., Combs Landscape & Nursery, Inc., B+B Electric Co., Inc., and June Rinsch, in her capacity as the Gibson County Treasurer, Appellees–Defendants,**

and

**J.D. Music Tile Company, Inc., and E & B Paving, Inc., Appellees–Intervenors.**

No. 26A01–0209–CV–345.

Court of Appeals of Indiana.

March 26, 2003.

Steven S. Hoar, Kahn, Dees, Donovan, & Kahn, LLP, Evansville, IN, Don L. Smith, Smith & Cashion, PLC, Nashville, TN, Attorneys for Appellant.

Angela L. Freel, Rudolph, Fine, Porter & Johnson, L.L.P., Evansville, IN, Attorney for Superior Concrete Constructors, Inc.

James D. Johnson, Rudolph, Fine, Porter & Johnson, L.L.P., Evansville, IN, Attorney for Appellee Combs Landscape & Nursery, Inc.

R. Steven Krohn, Rudolph, Fine, Porter & Johnson, L.L.P., Evansville, IN, Attorney for Appellee J.D. Music Tile Company, Inc.

Jerry D. Stilwell, Bamberger, Foreman, Oswald & Hahn, LLP, Princeton, IN, Attorney for Appellee Koberstein Trucking, Inc.

Robert F. Stayman, Ziemer, Stayman, Weitzel & Shoulders, LLP, Evansville, IN, Attorney for Appellee B+B Electric Co., Inc.

## OPINION

KIRSCH, Judge.

MPACT Construction Group, Inc. ("MPACT"), the general contractor for the construction of the Flying J Travel Plaza in Gibson County, Indiana, appeals the trial court's denial of its motion to compel arbitration and stay litigation and raises the following two restated issues:

I. Whether the general construction contracts, which mandate arbitration in the case of disputes arising between MPACT and the owner, Flying J, Inc. ("Flying J"), require Flying J to arbitrate its disputes with MPACT.

II. Whether the subcontracts between MPACT and the various subcontractors incorporate by reference the arbitration provision of the general contracts and thereby require the subcontractors to submit their claims with MPACT to arbitration.

We affirm in part and reverse in part.[1]

## FACTS AND PROCEDURAL HISTORY

On June 2, 2000, MPACT and Flying J entered into the American Institute of Architects ("AIA") Standard Form of Agreement Between Owner and Contractor ("Standard Agreement")[2] for the construction of the Flying J Travel Plaza, in Gibson County, Indiana.[3] The Standard Agreement incorporated by reference the AIA General Conditions of the Contract for Construction ("General Conditions").[4] *Appellant's Appendix* at 21.

Between July and December 2000, MPACT entered into subcontracts ("Subcontracts") with various subcontractors, including Superior Concrete Constructors, Inc. ("Superior Concrete"), Gary's Plumbing Service, Inc. ("Gary's Plumbing"), Koberstein Trucking, Inc. ("Koberstein Trucking"), Combs Landscape & Nursery, Inc. ("Combs Landscape"), B+B Electric Co., Inc. ("B+B Electric"), J.D. Music Tile

---

1. We heard oral argument in this case on February 27, 2003, in Indianapolis, Indiana. We commend counsel on their written and oral advocacy.

2. AIA Document A101, 12th ed. (1987).

3. On June 2, 2000, MPACT and Flying J also entered into a Standard Agreement for the construction of a Flying J Travel Plaza in Oklahoma. Because the Oklahoma contract does not appear to have bearing on the present appeal, and based upon counsel's statements at oral argument, we do not expressly address it herein.

4. AIA Document A201, 14th ed. (1987).

Company, Inc. ("J.D. Music Tile"), and E & B Paving, Inc. ("E & B Paving") (collectively "Subcontractors").[5]

After Flying J failed to pay, MPACT and Subcontractors, with the exception of J.D. Music Tile who later intervened, recorded mechanic's liens against the property in the summer of 2001. In November 2001, Superior Concrete filed suit to foreclose its lien and recover the alleged unpaid subcontract amount. Superior Concrete also alleged a breach of contract by MPACT. A flurry of cross-claims and counter-claims followed as Subcontractors, as well as other subcontractors not parties to this appeal, asserted their claims for payment. MPACT also filed a cross-claim against Flying J for breach of contract and a claim to foreclose its mechanic's lien.

On May 30, 2002, MPACT filed a motion to compel arbitration and stay litigation, asserting that Subcontractors' claims were subject to arbitration based upon the terms of the Subcontracts and the General Conditions. After a hearing, the trial court denied the motion, and MPACT appealed as a matter of right pursuant to the provisions of Indiana's Uniform Arbitration Act, IC 34–57–2–19(a)(1), and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16.

### DISCUSSION AND DECISION

#### I. Governing Law

In 1925, Congress passed the FAA, now codified at 9 U.S.C. §§ 1–16. It was enacted to reverse judicial hostility toward arbitration agreements that existed at common law and place arbitration agreements on equal footing with other contracts. Note, An Unnecessary Choice of Law: Volt, Mastrobuono, and Federal Arbitration Act Preemption, 115 Harvard L.Rev. 2250, 2252 (2002). Its "limited purpose" is to enforce arbitration agreements according to their terms. Id.

■ The FAA applies to any contract "evidencing a 'transaction in commerce.' "[6] 9 U.S.C. § 2. Under the FAA, arbitration provisions are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id. The FAA applies whether the action is brought in state or federal court. See Pathman Constr. Co. v. Knox County Hosp. Ass'n, 164 Ind.App. 121, 132, 326 N.E.2d 844, 850–51 (1975); see also University Casework Sys., Inc. v. Bahre, 172 Ind.App. 624, 636, 362 N.E.2d 155, 162–63 (1977) (FAA must prevail wherever applicable). See also Zhaodong Jiang, Federal Arbitration Law and State Court Proceedings, 23 Loy. L.A. L.Rev. 473, 477 (1990) (federal and state courts generally agree that section 2 of FAA applies to state court proceedings).

■ In light of the interstate nature of the Flying J construction project,[7] the FAA is applicable to this matter. See

---

**5.** Superior Concrete, Koberstein Trucking, Combs Landscape, B+B Electric, and J.D. Music Tile jointly filed the sole Appellees' Brief.

**6.** " 'The case law definition of transactions involving commerce to which Title 9 is applicable is broad and includes trade generally between citizens of the several states, including the purchase and sale of property of all kinds and descriptions.' " See Pathman Constr. Co. v. Knox County Hosp. Ass'n, 164 Ind.App. 121, 134, 326 N.E.2d 844, 852

(1975) (quoting C.P. Robinson Constr. Co. v. National Corp. for Hous. Part., 375 F.Supp. 446, 451 (D.C.N.C.1974)).

**7.** Flying J is a Utah corporation; FJI Plaza III, LLC, to whom Flying J quitclaimed its interest in the subject property in July 2001, is a Delaware corporation; MPACT is a Tennessee limited liability company; Superior Concrete, Koberstein Trucking, and Combs Landscape are Indiana corporations; B+B Electric is a Kentucky corporation; and J.D. Music Tile is an Ohio corporation.

*University Casework,* 172 Ind.App. at 635, 362 N.E.2d at 162 (evidence that university construction project involved parties from multiple states sufficient to demonstrate contract involved interstate commerce and FAA applied); *Pathman,* 164 Ind.App. at 134, 326 N.E.2d at 853 (construction contract that involved contractors and subcontractors from different states contemplated interstate activity within the scope of FAA).[8]

■ Even though a matter falls within the scope of the FAA, courts generally apply state law to the issue of whether the parties agreed to arbitrate their claims. *See Gibson v. Neighborhood Health Clinics, Inc.,* 121 F.3d 1126, 1130 (7th Cir.1997) (in determining whether valid arbitration agreement arose between parties, federal court should look to state law that ordinarily governs the formation of contracts, citing 9 U.S.C. § 2); *Ziegler v. Whale Sec. Co., L.P.,* 786 F.Supp. 739, 742 (N.D.Ind. 1992) (court must look to state contract law to determine whether an arbitration agreement exists). *See also Chan v. Drexel Burnham Lambert, Inc.,* 178 Cal.App.3d 632, 640, 223 Cal.Rptr. 838, 842 (Cal.Ct. App.1986) (existence of valid agreement to arbitrate involves general contract principles, and state law governs disposition of that question); Note, 115 Harvard L.Rev. at 2252 ("The Act thus requires courts to apply state contract principles to arbitration agreements, just as they would to any other contract.").

■ The FAA preempts state law, however, to the extent that they conflict. Note, 115 Harvard L.Rev. at 2253; *see also Pathman,* 164 Ind.App. at 130–32, 326 N.E.2d at 851 (in appeal from judgment declaring arbitration provision void, 1968 construction contract transaction fell within FAA and federal law preempted Indiana law that at the time did not favor arbitration). "The general idea is that the FAA precludes state laws that thwart parties' attempts to arbitrate their disputes." Note, 115 Harvard L.Rev. at 2254.

■ Because Indiana recognizes a strong policy favoring enforcement of arbitration agreements, *Indiana CPA Society, Inc. v. Gomembers, Inc.,* 777 N.E.2d 747, 750 (Ind.Ct.App.2002), its laws do not conflict with the federal policy. *See also Northwestern Mut. Life Ins. Co. v. Stinnett,* 698 N.E.2d 339, 343 (Ind.Ct.App. 1998) (Indiana recognizes a strong policy favoring enforcement of arbitration agreements). Accordingly, it is appropriate to apply Indiana contract law even though the matter falls within the ambit of the FAA.[9]

■ Our standard of review in this case is de novo. *See Gibson,* 121 F.3d at 1130 (in determining whether employee's contract with employer incorporated arbitration provision found in employee handbook, court reviewed matter de novo); *see also Mislenkov v. Accurate Metal Detin-*

---

8. We note that, in 1969, our legislature adopted the Indiana Uniform Arbitration Act, IC 34–4–2–1, and thereby repudiated the former common law rule that disfavored enforcement of arbitration agreements. However, it appears the FAA nonetheless governs this matter due to the interstate nature of the contract at issue. *See University Casework,* 172 Ind.App. at 636, 362 N.E.2d at 162–63 (appellate court rejected assertion that Indiana Uniform Arbitration Act controlled issue of whether party agreed to arbitrate and

held FAA applied due to interstate nature of construction contract, but noted trial court's determination that both Acts applied was harmless error).

9. Section 13.1 of the General Conditions likewise indicates that Indiana law is to be applied. It states: "The Contract shall be governed by the law of the place where the Project is located." *Appellant's Appendix* at 51.

*ning, Inc.,* 743 N.E.2d 286, 290 (Ind.Ct. App.2001) (when reviewing the trial court's interpretation of a contract, we view the contract in same manner as trial court). The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Mislenkov,* 743 N.E.2d at 290. Words used in a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended. *Id.* Words, phrases, sentences, paragraphs, and sections of a contract cannot be read alone. *Id.* The entire contract must be read together and given meaning, if possible. *Id.*

## II. Must Flying J Submit to Arbitration?

MPACT appeals the trial court's denial of its motion to compel arbitration and stay litigation. Flying J did not oppose MPACT's motion in the trial court, nor did it file an appellee's brief. When an appellee fails to submit a brief, we need not undertake the burden of developing an argument for the appellee. *Kladis v. Nick's Patio, Inc.,* 735 N.E.2d 1216, 1219 (Ind.Ct.App.2000). This court may reverse the trial court if the appellant makes a prima facie showing of reversible error. *Id.* "Prima facie, in this context, is defined as 'at first sight, on first appearance, or on the face of it.'" *Burrell v. Lewis,* 743 N.E.2d 1207, 1209 (Ind.Ct.App. 2001) (quoting *Johnson County Rural Elec. Membership Corp. v. Burnell,* 484 N.E.2d 989, 991 (Ind.Ct.App.1985)).

Under Indiana contract law, the party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement. *Gibson,* 121 F.3d at 1130 (citing *Wilson Fertilizer & Grain v. ADM Mill-*

*ing Co.,* 654 N.E.2d 848, 849 (Ind.Ct.App. 1995), *trans. denied* (1996)). When determining whether the parties have agreed to arbitrate a dispute, we apply ordinary contract principles governed by state law. *Mislenkov,* 743 N.E.2d at 289 (citing *St. John Sanitary Dist. v. Town of Schererville,* 621 N.E.2d 1160, 1162 (Ind.Ct.App. 1993)). In addition, "[w]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration," and the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." *Id.* (citing *St. John Sanitary Dist.,* 621 N.E.2d at 1162 (quoting *Ziegler,* 786 F.Supp. at 741)). However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. *Mislenkov,* 743 N.E.2d at 289; *St. John Sanitary Dist.,* 621 N.E.2d at 1161 (arbitration is a matter of contract, and party cannot be required to submit to arbitration any dispute which he has not agreed to submit).

Here, we find that MPACT has made a prima facie case to establish that Flying J must submit to arbitration. The Standard Agreement expressly incorporates the General Conditions. It states: "The 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction, is adopted in this document by reference." *Appellant's Appendix* at 21. In turn, the General Conditions expressly provide for arbitration as follows: "Any controversy or claim arising out of the Contract shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association[.]" *Appellant's Appendix* at 41.

MPACT's cross-claims against Flying J are for breach of contract and foreclosure of a mechanic's lien stemming from the

same set of facts that gave rise to the breach of contract claim by Superior Concrete. Flying J's cross-claim against MPACT is also a breach of contract claim. These disputes fall squarely within the terms of the General Conditions that mandate arbitration.

Accordingly, the trial court erred when it denied MPACT's motion that sought an order compelling Flying J to submit to arbitration, and we therefore reverse that portion of the trial court's order.

### III. Must Subcontractors Submit to Arbitration?

■■■■ All parties agree that there is no express provision in the Subcontracts that requires arbitration; therefore, we must determine whether that requirement was imposed on Subcontractors via incorporation of the Standard Agreement and General Conditions. Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by reference as a part of the contract and, therefore, may properly be considered in the construction of the contract. *I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1036 (Ind.Ct.App.1998), *trans. denied* (citing 17A AM JUR 2D, *Contracts*, § 400 at 426 (1991)). Where a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties. *Id.* However, if in a written contract, a reference is made to another writing for a particularly designated purpose, the other writing becomes a part of the contract only for the purpose specified, and is foreign to the contract for all purposes other than the one specified. *Id.*

■■■■ MPACT asserts that the Subcontracts incorporate by reference the entire Standard Agreement, which, in turn, incorporates the General Conditions that expressly mandate arbitration of claims. Subcontractors disagree with this reading, and argue that the Subcontracts incorporate the Standard Agreement and General Conditions only in part and only as applicable to the specific work to be performed. After carefully considering the language of the Subcontracts, we agree with Subcontractors that the terms of the Subcontracts limit the degree to which the Standard Agreement and General Conditions were incorporated by reference.

Initially, we observe that the recital portion of the Subcontracts twice references the subcontracted "work" as that which is incorporated into the Subcontracts:

> WITNESSETH that WHEREAS Contractor has heretofore entered into a General Contract with [Flying J], hereinafter called the Owner, to furnish and pay for all necessary and required labor, materials, equipment, bonds, permits, insurance, state/local taxes and warranties, to perform all work required for a complete [work as per the subcontract agreement] inclusive of, but not limited to the project plans and specifications [ ], schedules, drawings and amendments by addenda, as prepared by PDG Design & Development, the Architect, and known as Flying "J" Travel Plaza, which are hereby made a part of the General Contract between the Owner and the Contractor *and are hereby made a part of this subcontract as applicable to the work stated therein, and pursuant to the subcontractor's intent to inter [sic] into this sub-contractual agreement, with reference to any and all of said work.*

*Appellant's Appendix* at 58, 121, 130, 158, 186, 196 (emphasis added).

When addressing the parties' intent, the Subcontracts similarly refer to the "the work:"

The Sub-contractor acknowledges that he has read the General contract and all plans and specifications, together with all amendments and addenda thereto, and is familiar therewith and agrees to comply with and perform all provisions thereof applicable to Sub–Contractor. *The intent of the Contract documents is to include all items necessary for the proper execution and completion of the work.* The contract documents are complementary and what is required by any one shall be binding as if required by all. Work not covered in the Contract documents will not be required, unless it is consistent therewith and is reasonable [sic] inferable therefrom as being necessary to produce the intended results. *Appellant's Appendix* at 60, 123, 132, 188, 198 (emphasis added).

MPACT nevertheless argues that the Subcontracts incorporated the terms of the General Conditions in their entirety and, in support thereof, focuses on other language within that same provision: "The contract documents are complementary and what is required by any one shall be binding as if required by all." *Appellant's Appendix* at 60, 123, 132, 188, 198. We concede that this clause, standing alone, might suggest a more sweeping incorporation by reference of the General Conditions into the Subcontracts. However, considering that parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate, *Mislenkov,* 743 N.E.2d at 289, and because the

Subcontracts include the other, more specific language to limit the scope of incorporation to "the work," we are not convinced that the broad language cited by MPACT operates to require Subcontractors to arbitrate their claims. Our conclusion is bolstered by the fact that the Subcontracts do not contain a blanket incorporation clause, an express arbitration clause, or any express provision concerning Subcontractors' rights and remedies. The Subcontracts do, however, appear to permit MPACT to file suit against Subcontractors for breach of contract or default.[10] This suggests a potential inconsistency lurking in MPACT's position: Subcontractors are required to arbitrate their claims, by virtue of the Subcontracts, but MPACT is not.

For all the reasons set forth above, we find that the Subcontracts incorporated the terms of the Standard Agreement and General Conditions only with regard to the subcontracted work, i.e., the specifications and description of the work, as well as its performance, execution, and completion. The Subcontracts did not adopt by reference the arbitration requirement. Consequently, we affirm the trial court's denial of MPACT's motion to compel Subcontractors to arbitrate their claims.[11]

Affirmed in part, reversed in part.[12]

SULLIVAN, J., and SHARPNACK, J., concur.

---

**10.** "The rights and remedies granted to the Contractor under this article and pursuant to the other provisions of the Sub–Contract shall be cumulative and are not intended to be in lieu of any legal right or remedy which contractor may have against Sub–Contractor for breach of the Cub–Contract [sic] or default hereunder, afforded by state or federal law." *Appellant's Appendix* at 123.

**11.** We note the possibility that this outcome was forecast by the General Instructions to AIA Form A201 (General Conditions), which cautions the practitioner against the use of non-AIA forms to avoid inconsistency in language and intent. *Appellant's Appendix* at 55.

**12.** Subcontractors also raise the issue that, if indeed this court finds that they must arbitrate their claims, MPACT waived its right to arbitration by virtue of its participation in the

litigation. Because we find that the Subcontracts do not require Subcontractors to arbitrate their claims, we do not reach this issue.