**Josh GOLD, Mitch Gold and Andrea Gold, Appellants–Plaintiffs,**

v.

**CEDARVIEW MANAGEMENT CORP., Appellee–Defendant.**

No. 53A04–1007–PL–451.

Court of Appeals of Indiana.

June 9, 2011.

---

Michael W. McBride, Ferguson & Ferguson, Bloomington, IN, Attorney for Josh Gold.

Thomas M. McDonald, Applegate, McDonald & Associates, Bloomington, IN, Attorney for Mitch Gold and Andrea Gold.

Michael L. Carmin, Gregory A. Bullman, Andrews, Harrell, Mann, Carmin & Parker, P.C., Bloomington, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Josh Gold[1] appeals summary judgment for Cedarview Management Corp. (Cedarview). He presents three issues for our review:

1. Whether the trial court erroneously considered extrinsic evidence;

2. Whether the Settlement Agreement between Cedarview and Mixed Greens, a limited liability corporation owned by Josh Gold, precluded Cedarview from pursuing claims against Gold individually; and

3. Whether the trial court erred in determining Mixed Greens breached the lease agreement.

We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

On January 5, 2006, Mixed Greens leased space from Cedarview. The Lease included a personal guaranty from Mitch, Andrea, and Josh Gold (collectively, "the Golds"):

For valuable consideration and in order to induce [Cedarview] to enter into the above and foregoing Lease Agreement, [the Golds] personally guaranty the full performance of the Lease Agreement by [Mixed Greens], including prompt payment of all sums required to be paid by [Mixed Greens].

(App. at 41.)[3]

In March 2006, Mixed Greens entered into a construction agreement with ERL–4, LLC, for improvements to the leased space. On January 11, 2008, Mixed Greens sued ERL–4 and Cedarview, alleging ERL–4 did not perform pursuant to the construction agreement and Cedarview breached the Lease. The parties agreed to submit their claims to mediation.

On January 22, 2009, Mixed Greens and Cedarview entered into a Settlement Agreement that resolved "all claims and counterclaims as to any actions that occurred prior to the date of the agreement" between Mixed Greens, Cedarview, "and their guarantors." (Id. at 46.) Mixed Greens would pay Cedarview a total of $25,000 over four payments, the parties

---

1. Mitch and Andrea Gold were also parties to the trial court action and were guarantors for the original lease. They filed a motion to join the appeal on April 15, 2011, after the case had been fully briefed and five days before oral argument was scheduled to occur. We denied that motion.

2. We heard oral argument April 20, 2011, at the Statehouse in Indianapolis.

3. Both the Appellant and Appellee filed Appendices. We will cite the Appellant's Appendix as "App." And the Appellee's Appendix as "Appellee's App."

would share the cost of mediation, and the parties would execute an "Ammendment (sic) to Commercial Lease Agreement." (*Id.* at 47.) Mixed Greens also agreed to execute a $25,000 Agreed Judgment, which would be filed if Mixed Greens did not comply with the Settlement Agreement.[4] Finally, the parties agreed, "Upon completion of all terms herein, the parties shall execute mutual releases and dismiss all claims arising out of the above referenced action with prejudice." (*Id.*)

The first $10,000 payment under the Settlement Agreement was due on February 16, 2009, and Mixed Greens did not pay. On February 17, Cedarview changed the locks on the property. Cedarview filed a Motion for Judgment to enforce the Settlement Agreement on February 19. On February 24, Mixed Greens sent a letter to Cedarview alleging Cedarview breached the Lease by denying Mixed Greens access to the premises. Cedarview responded with a letter alleging it denied access because Mixed Greens breached the Lease and Settlement Agreement. On March 9, the trial court ordered Mixed Greens, pursuant to the Agreed Judgment, to pay Cedarview $25,000 plus $115.08 in prejudgment interest and $343 in attorneys' fees.

To satisfy the judgment, Cedarview auctioned Mixed Greens' personal property remaining at the leased space. The amount collected from the auction did not cover the judgment, so Cedarview asked the trial court to order the Golds, as guarantors, to pay the balance due from the Agreed Judgment and additional costs resulting from Mixed Greens' breach of the Lease. The Golds answered, asserting they were released from liability under the Settlement Agreement for any monies due from Mixed Greens. Cedarview moved for summary judgment, and the Golds replied. After a hearing the trial court granted summary judgment for Cedarview and ordered the Golds to pay Cedarview $48,520.44 plus interest.

## DISCUSSION AND DECISION

We review a summary judgment under the following standard:

A party is entitled to summary judgment upon demonstrating the absence of any genuine issue of fact as to a determinative issue unless the non-moving party comes forward with contrary evidence showing an issue of fact for trial. An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. But a *de novo* standard of review applies where the dispute is one of law rather than fact.

*Dugan v. Mittal Steel USA, Inc.,* 929 N.E.2d 184, 185–86 (Ind.2010). Construction of a written contract presents a pure question of law; accordingly, our review is *de novo. Harrison v. Thomas,* 761 N.E.2d 816, 818 (Ind.2002).

1. *Consideration of Extrinsic Evidence*

■ When interpreting a contract, a court must determine and give effect to the parties' intent through the language they use to express their rights and duties under the contract. *Collins v. McKinney,*

---

4. If that Agreed Judgment had to be filed in court, any payments made under the Settlement Agreement would be credited toward the $25,000 judgment. The terms also provided that Cedarview could recover reasonable costs and attorney's fees incurred in collecting the Agreed Judgment.

871 N.E.2d 363, 372 (Ind.Ct.App.2007). Absent ambiguity, the terms of a contract are given their plain and ordinary meaning. *Ferrell v. Dunescape Beach Club Condos Phase I, Inc.,* 751 N.E.2d 702, 709 (Ind.Ct.App.2001). There is ambiguity when "reasonable people could come to different conclusions about the contract's meaning." *Id.* Extrinsic evidence is evidence "relating to a contract but not appearing on the face of the contract because it comes from other sources." Black's Law Dictionary 578 (7th ed.1999). When the terms of an agreement are "susceptible to clear and unambiguous construction," extrinsic evidence is not admissible. *Fort Wayne Bank Bldg., Inc. v. Bank Bldg. & Equip. Corp. of Am.,* 160 Ind.App. 26, 309 N.E.2d 464, 467 (1974).

■ Josh argues the trial court erred by determining he was liable to Cedarview for the amount due under the Settlement Agreement because he was not a guarantor thereof. Rather, he notes: (1) the "clear and unambiguous language" of the Settlement Agreement indicates the terms apply only to Mixed Greens, (Br. of Appellant at 12), with the exception of two references to "the parties" instead of Mixed Greens;[5] and (2) he signed the Settlement Agreement as a "member," not as a guarantor. (App. at 48.) Thus, Josh asserts, he is not personally liable for the funds due from Mixed Greens under the Settlement Agreement.

The Settlement Agreement's introductory statement mentions "guarantors": "the Plaintiff, Mixed Greens, LLC (hereinafter "Mixed Greens") and the Defendant, Cedarview Management (hereinafter "Cedarview"), and any subsidiaries of the named parties and their guarantors agree to settle all claims and counterclaims as to any actions that occurred prior to the date of this agreement[.]" (*Id.* at 46.) Nevertheless, Josh argues, the trial court could interpret "guarantors" to include him only if the trial court looked to the terms of the original Lease, which he signed as a "guarantor." Josh argues the Lease was extrinsic evidence that the court should not have considered when determining his liability under the Settlement Agreement between Mixed Greens and Cedarview. We disagree.

■ The contemporaneous document doctrine provides, "[i]n the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction will be construed together in determining the contract." *Salcedo v. Toepp,* 696 N.E.2d 426, 435 (Ind.Ct.App.1998). Even if documents are executed at different times, they may still be construed together as long as they relate to the same transaction. *McCae Mgmt. Corp. v. Merchants Nat. Bank and Trust Co. of Indianapolis,* 553 N.E.2d 884, 887 (Ind.Ct.App.1990).

The Settlement Agreement required the Golds to sign an Amendment to the Lease. As those documents were part of the same transaction, we construe them together to determine the meaning of ambiguous or conflicting terms. *See Salcedo,* 696 N.E.2d at 436.

The Amendment to the Lease addresses only three terms of the Lease; it then explicitly states, "Except as amended or restated herein, all other terms and provi-

---

**5.** These terms are as follows:

4. All parties hereto, agree to execute the "AMMENDMENT [sic] TO COMMERCIAL LEASE AGREEMENT" which is attached hereto and made a party [sic] hereof as "Exhibit A";

5. Upon completion of all terms herein, the parties shall execute mutual releases and dismiss the claims arising out of the above referenced action with prejudice[.] (App. at 47.)

sions of the Commercial Lease Agreement remain in full force and effect." (App. at 51.) Thus, the Amendment to the Lease incorporated all the unchanged terms of the original Lease, *see MPACT Const. Group, LLC v. Superior Concrete Constructors, Inc.*, 785 N.E.2d 632, 639 (Ind. Ct.App.2003) ("Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by reference as a part of the contract and, therefore, may properly be considered in the construction of the contract."), and we interpret the Amendment to the Lease by reference to unchanged portions of the original Lease. *See id.*

As the original Lease was incorporated into the Amended Lease, and as we must construe the Settlement Agreement together with the Amended Lease, we accordingly consider the original Lease when construing the Settlement Agreement. All of the documents arose from the same transaction. *See, e.g., McCae Mgmt. Corp.*, 553 N.E.2d at 887 (even if not executed at the same time, documents concerning the same transaction may be construed together as contemporaneous). The Settlement Agreement represented a compromise of "all claims and counterclaims" between the parties, one of which claims was that Cedarview breached the original Lease. (*See* Appellee's App. at 2–3 (CCS indicating Agreed Judgment between the parties related to claim filed by Mixed Greens on January 11, 2008, and cross claim filed by Cedarview on March 26, 2008)); (*see also* App. at 26 (complaint for damages alleges "Cedarview breached the terms of the lease with Plaintiff [Mixed Greens]")); *Id.* at 28–41 (Plaintiff's Exhibit A to Complaint for Damages is Commercial Lease Agreement containing personal guaranty from Josh Gold). Therefore, the trial court did not err by considering the Lease Agreement when determining Josh was personally liable as a guarantor of the Lease for the payment of the Settlement Agreement.

## 2. *Claim Preclusion*

The trial court awarded Cedarview $19,732.39 for "total unpaid lease obligations." (*Id.* at 19.) Included in that amount was the December 2008 rent of $2,011. Josh argues the terms of the Settlement Agreement preclude Cedarview's action against him for any breach of the Lease that occurred prior to the date of the Settlement Agreement, including the nonpayment of the rent from December 2008. We disagree.

The Settlement Agreement dated January 22, 2009, addressed "all claims and counterclaims as to any actions that occurred *prior* to the date of this agreement. . . ." (*Id.* at 46) (emphasis added). An affidavit from Cedarview's financial manager Pam Spilbeler confirmed the Settlement Agreement reduced Cedarview's claims for "non-payment of rent, taxes, insurance and construction costs to the sum of $25,000 to be paid by Mixed Greens." (*Id.* at 93.) Those facts suggest the non-payment of December 2008 rent was included in the claims settled by the Settlement Agreement.

However, Spilbeler also averred that *after* entering the Settlement Agreement with Mixed Greens regarding the lease disputes in January 2009,

Mixed Greens, acting by Josh Gold, its member, objected to the ACH payment draw by Cedarview Management Corp. against the Mixed Greens bank account for payment of the December, 2008 rent. As a result of the objection by Mixed Greens to the ACH payment, the draw against the Mixed Greens bank account was rejected and the December, 2008 rent was not paid.

(*Id.*) [6] Josh did not designate any evidence contradicting that assertion. Therefore, even taken in the light most favorable to Josh, the evidence indicates Cedarview's claim for the non-payment of the December 2008 rent arose after the signing of the Settlement Agreement. Because the claim arose later, the Settlement Agreement did not resolve it. The trial court did not err by including the non-payment of December 2008 rent in the amount Mixed Greens owed Cedarview for unpaid lease obligations outside the Settlement Agreement.

### 3. *Mixed Greens' Breach of the Lease Agreement*

▇ Josh contends Mixed Greens was not in breach of the Lease on February 17, 2009, and, therefore, Cedarview breached the Lease when it retook the premises on that date. Cedarview asserts it properly exercised a remedy available under the Settlement Agreement. In response, Josh claims Cedarview is precluded from pursuing other remedies because it chose the remedy of enforcement of the Settlement Agreement. We disagree with Josh.

Under the Lease, Mixed Greens was to pay taxes and insurance, and it seems some of the claims addressed by the Settlement Agreement were for the non-payment of these items. (*See* Appellee's App. at 36 ("the mediated settlement included past due amounts for taxes and insurance, matters past due under the Lease Agreement").) The terms of the lease make clear that failure to pay those items put the lease in default, (App. at 34), and, if not cured within ten days, "all rights of Lessee under this Lease . . . shall expire and terminate." (*Id.* at 35.) Thereupon, "Lessor . . . may without further notice, enter upon and re-enter the Leased Prem-

ises and possess and repossess itself thereof, by force, summary proceedings, ejectment or otherwise, and may dispossess Lessee. . . ." (*Id.*)

The Settlement Agreement was a compromise whereby Mixed Greens agreed to pay a certain amount of money within a specified time period to settle all of its prior defaults, while Cedarview agreed to give Mixed Greens additional time to correct the defaults. The parties made this agreement with the understanding that an Amended Lease and Agreed Judgment would minimize the risk to Cedarview of permitting Mixed Greens to stay in the leased premises. While the Settlement Agreement was entered "to settle all claims and counterclaims," (*id.* at 46), it explicitly states: "Upon completion of all terms herein, the parties shall execute mutual releases and dismiss the claims arising out of the above referenced action with prejudice." (*Id.* at 47.) One of the terms to be completed was payment of the $25,000 debt over four installments between February and May of 2009. Thus, until Mixed Greens paid that sum and received a release from Cedarview, Mixed Greens remained in default, and Cedarview retained its right to reenter the premises and terminate the Lease based on Mixed Greens failure to cure the default as agreed.

Contrary to Josh's assertion, Cedarview was not required to choose between enforcing the Settlement Agreement and reclaiming the property. Although reclaiming the property is not explicitly provided, the Settlement Agreement does not prohibit or contradict this remedy. *See City of Hammond v. Beiriger,* 164 Ind.App.

---

6. According to Spilbeler, Mixed Greens paid monthly rent by ACH payment, which required authorization from Mixed Greens, and Mixed Greens could revoke the authorization

"up to ninety (90) days after the amount is drawn from the account and the payment is reversed." (App. at 92.)

275, 280, 328 N.E.2d 466, 469 (1975) ("doctrine of election of remedies does not preclude the concurrent or successive pursuit of two or more remedies which are consistent in nature"), *reh'g denied. See also Kimmel v. Captain,* 107 Ind.App. 621, 626, 24 N.E.2d 435, 437 (1940) ("If the assertion of one cause of action involves the repudiation of another, then the modes of redress are inconsistent. If the one cause of action admits a statement of facts, and the other denies the same facts, the remedies sought by such actions are inconsistent."). Moreover, the *Default Provisions and Remedies* section of Lease, (App. at 34 (emphasis in original)), which above we determined must be construed with the Settlement Agreement to determine the contract between these parties, provides:

> The rights and remedies of Lessor set forth herein shall be in addition to any other right and remedy now and hereafter provided by law. All rights and remedies shall be cumulative and not exclusive of each other. Lessor may exercise its rights and remedies at any time, in any order, and to any extent, and as often as Lessor deems advisable without regard to whether the exercise of one right or remedy, precedes, concurs with or succeeds the exercise of another.

(*Id.* at 36.) Thus, the Lease permitted Cedarview to elect to terminate Mixed Green's lease of the property after Cedar-

view had attempted via another process to obtain the monies due to it under the Lease. Therefore, Cedarview's re-entry of the premises on February 17, 2009, was not a breach of the lease.

## CONCLUSION

As the Lease Agreement and Settlement Agreement were contemporaneous documents, the trial court did not err in considering the Lease Agreement when determining Josh Gold was a guarantor.[7] The Settlement Agreement did not address Cedarview's claim for the December 2008 non-payment of rent because it was entered before Josh revoked the ACH payment. Finally, we find no merit to Gold's assertion that Cedarview breached the lease by locking him out of the premises on February 17, 2009. Therefore, we affirm the $48,520.44 (plus interest) summary judgment in favor of Cedarview.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.

---

**7.** We note that, although it was not presented as such, Josh's argument is in essence that the conduct of the parties amounted to a novation. A novation is affected when a new contract is made with the intent to replace and thereby extinguish one already in existence. *Ashbaugh v. Horvath,* 859 N.E.2d 1260, 1265 (Ind.Ct.App.2007). A novation requires (1) the existence of a valid contract, (2) the agreement of all parties involved to a new contract, (3) a valid new contract, and (4) an extinguishment of the old contract in favor of the new. *Winkler v. V.G. Reed & Sons, Inc.,*

638 N.E.2d 1228, 1233 (Ind.1994). Where a novation is found, it acts to extinguish any claims that existed under the original contract. *Ashbaugh,* 859 N.E.2d at 1265.

In this case, Josh contends essentially that the Settlement Agreement supplanted and extinguished the original lease agreement—i.e., affected a novation. Even had it been presented in these terms, however, the outcome would have been the same. As our discussion indicates, the elements of a novation, as set out in *Winkler,* have not been met.